## FAULK *et al.* v. BOARD OF COM'RS OF MARSHALL COUNTY *et al.*

No. 5956. Opinion Filed April 28, 1914.

(140 Pac. 777.)

1. **COUNTIES—County Indebtedness—Assent of Voters.** Under section 26, art. 10, of the Constitution, where three-fifths of the voters of the county, city, or other subdivision of the state, voting at an election upon the proposition whether such county, city, or other subdivision shall become indebted for any purpose in an amount exceeding the income and revenue of such county, etc., in any year, vote in favor of such proposition, then such indebtedness is authorized.

2. **SAME—Right of Suffrage—Qualification of Voter.** The qualification of such voter is prescribed in sections 1 and 4a of article 3 of the Constitution, and at elections held for the purposes defined in section 26, article 10, his qualification is fixed without regard to his status as a property tax-paying or non-property tax-paying voter.

3. **SAME—Bond Issue for Courthouse—Statutes.** Section 1625, Rev. Laws 1910, empowering the board of county commissioners to contract for the erection of courthouses and jails, and to issue bonds therefor, provided that the same shall be issued if a majority of the qualified tax-paying voters, voting at an election at which such matter is submitted, etc., does not affect the percentage of three-fifths required by the constitutional provision; and **held,** further, that it is not a limitation on the qualification of a voter as stated in sections 1 and 4a of article 3 of the Constitution.

4.      **SAME.** The board of county commissioners, under section 1625, Rev. Laws 1910, are empowered to contract for the purchase or erection of a courthouse and jail when a majority of those voting in favor of the proposition submitted by the board are qualified property tax-paying voters.

(Syllabus by the Court.)

*Error from District Court, Marshall County;*
*R. C. Allen, Assigned Judge.*

Action by D. L. Faulk and others against the Board of County Commissioners of Marshall County, Oklahoma, and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

An election was held in Marshall county on September 29, 1913, at which was submitted two propositions by the board of county commissioners, namely (1), shall the county commissioners be authorized to expend the sum of $75,000 for the construction of a courthouse to be owned and used by the county, etc.; and (2) should an indebtedness be incurred by the issuance of five and one-half per cent. interest-bearing negotiable coupon bonds of said county in the sum of $75,000 for such purpose, and a levy of a tax to pay the interest on said bonds, as well as to provide a sinking fund to pay the principal thereof.

The returns of the election were duly canvassed, and both propositions were declared to be carried by the requisite constitutional majority; and, in the month of October, 1913, the board of county commissioners proceeded to the issuance of the bonds in said sum, and the treasurer of said county being about to sell the bonds and deliver them, the plaintiffs in error began this action to enjoin the defendants in error, upon the grounds as alleged, that said propositions were not carried by the vote required, and, therefore, the election was void, and having no adequate remedy at law they prayed that the defendants be restrained by the district court of Marshall county. A restraining order was issued, and the cause set down for hearing in the district court. Plaintiffs in error amended their petition. Defendants in error filed general and special demurrers to the petition, which were overruled by the Hon. R. C. Allen, district judge authorized to hold a term of the court in Marshall county. The defend-

ants in error answered, and the allegations of the petition, as well as those of the answer, will be sufficiently reviewed, if necessary, in the opinion of the court, without stating the matters here. As was said, temporary injunction was issued and the cause went to trial before Hon. R. C. Allen in the district court of Marshall county before the court, without the intervention of a jury, and was submitted upon the pleadings and agreed statement of facts signed by all of the counsel for both plaintiffs and defendants. Upon hearing of the cause, the court, on the 10th day of November, 1913, dissolved the temporary injunction issued in the case, and dismissed the petition of plaintiffs.

Plaintiffs' motion for a new trial was heard and overruled, time allowed in which to serve a case-made; and this proceeding in error is regularly before the court to determine the questions at issue.

The agreed statement of facts filed in the district court of Marshall county and shown by the case-made on pages 30 to 32, inclusive, is as follows:

"In the District Court of Marshall County, State of Oklahoma, D. L. Faulk *et al.*, plaintiffs, v. The Board of County Commissioners of Marshall County *et al.*, defendants.

## "Stipulation.

"Come now the above-named plaintiffs, in person and by their attorneys, Hatchett & Ferguson, and the defendants in person, and by their attorneys of record, and stipulate and agree that the following contains a true statement of all the facts in this case.

"1.  That plaintiffs are residents and taxpayers of Marshall county, Oklahoma; that the defendants, W. S. Lasiter, Hugh Wiggs, and A. P. Ray, are the duly elected, qualified, and acting county commissioners of Marshall county, Oklahoma; that Ed Kirk is the duly elected, qualified, and acting county clerk of Marshall county, Oklahoma, and that Ava Millner is the duly elected, qualified, and acting county treasurer of Marshall county, Oklahoma.

"2.  That on the 29th day of September, 1913, pursuant to proper and legal procedure, theretofore had, an election was regularly held in Marshall county, Oklahoma, at which election there was submitted to the qualified electors of said county two propositions as follows:

" 'First Proposition. Shall the county commissioners of Marshall county, state of Oklahoma, be authorized to expend the sum of seventy-five thousand ($75,000) for the construction of a courthouse, in, to be owned by and for the use of said county?

" 'Second Proposition. Shall the board of county commissioners of Marshall county, state of Oklahoma, incur an indebtedness of said county, by issuing the negotiable coupon bonds of said county in the sum of seventy-five thousand dollars ($75,000) for the purpose of providing funds for the purpose of building a courthouse, in, to be owned by and for the use of said county, and·levy and collect an annual tax in addition to 'all other taxes upon all of the taxable property in said county, sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof at maturity; said bonds to bear interest at the rate of five and one-half ($5½) per centum per annum, payable annually?'

"Said election was held in accordance with the laws then in force, and in all respects was properly and legally conducted; that in said election, in all, 2,524 electors participated; that of said number, 2,054 were property tax-paying voters; that at said election, there were cast by nonproperty tax-paying voters, in favor of the first proposition, 303 votes, and 149 votes against said proposition, and there were cast in favor of the second proposition by nonproperty tax-paying voters 311 votes and against said proposition 151 votes; that there were cast by the property tax-paying voters at said election, in favor of the first proposition, 1,222 votes, and against said proposition 820 votes, and that there were cast by the property tax-paying voters at said election in favor of the second proposition, 1,223 votes, and against said proposition 826 votes. That at said election there were 13 ballots cast that were discarded as mutilated and not counted; these 13 being included in the total number above stated in this stipulation, to wit, 2,524 votes.

"That the figures as shown above were ascertained and determined by the returns of the county canvassing board, and the count of the ballots made in open court, and that the same are the true and correct result of said election.

"It is further stipulated and agreed that, as shown by the above figures, more than three-fifths of all the legal votes cast at said election were cast in favor of both the first and second propositions; that more than a majority of the property tax-paying voters of Marshall county at said election cast their ballots in favor of both the first and second propositions, but that less

than three-fifths of the property tax-paying voters voting in said election, cast their ballots in favor of either the first or second propositions.

"It is further stipulated and agreed that subsequent to said election and on, to wit, the 1st day of October, 1913, the county commissioners canvassed the returns from the various precincts and determined that both propositions had carried by more than 60 per cent. of both the nonproperty tax-paying voters and the property tax-paying voters, and by proper resolution declared both propositions carried; that no appeal was ever prosecuted from the action of the board of county commissioners.

"It is further stipulated and agreed that subsequent to said election and the canvass made by the board of county commissioners, the defendants herein attempted to negotiate the bonds, and at the time of the institution of this suit were attempting to sell and negotiate said bonds.

"It is further agreed that this cause shall be submitted upon the pleadings and upon this stipulation of the facts.

"HATCHETT & FERGUSON,
"Attorneys for Plaintiffs.

"W. I. CRUCE, V. B. HAYES, E. S. HURT, GEO. S. MARCH, F. E. KENNAMER, GEO. L. SNEED, J. O. MINTER,
"Attorneys for Defendants."

*Hatchett & Ferguson,* for plaintiffs in error.

*Chas. A. Coakley, Geo. S. March, E. S. Hurt, F. E. Kennamer, Geo. L. Sneed, W. I. Cruce, W. M. Franklin, J. O. Minter, W. E. Utterback,* and *V. B. Hayes,* for defendants in error.

RUSSELL, J. (after stating facts as above). Plaintiffs in error, in their briefs, say, at the outset, that the only question presented by the appeal in this case is:

"Does the law require that only property tax-paying voters vote on the proposition, and does it require sixty per cent. of such voters to incur the bonded indebtedness, *which it is admitted is in excess of the income and revenue for that year?*"

The italics are ours, and are made to call attention to that which is alleged as an admission, but emphatically denied by defendants in error, and we will also say that we have searched in

vain in the stipulation agreed upon to find if such an admission was made. However, be that as it may, whether the facts suggested by such an admission are established or not, and we are willing to concede that the submission was in excess of the income and revenue for that year, yet this is not by any means, in our opinion, decisive of the case, nor does it affect the propositions involved.

We will here quote section 26 of article 10 of the Constitution of the state of Oklahoma, which is as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

That part of the provision of the Constitution quoted, down to the proviso, is pertinent to be considered in connection with the proposition raised in this case. It would appear that any of the subdivisions named in this section shall not be allowed to become indebted, in any manner, for any purpose, in an amount exceeding, in any one year, the income and revenue provision made in that year without the assent of three-fifths of the voters in either of said subdivisions, voting at an election to be held for that purpose; that is to say, that it is only when it is proposed to become indebted, in any one year, exceeding the income and revenue for that year that the assent of three-fifths of the voters is required. "The voters thereof," to our minds, refers to and

means the voters of the county (as this is the subdivision at issue) who are by the Constitution qualified to vote, and if, as a voter, he is within the constitutional requirement, he is a voter in the sense contemplated by the organic law.

Who are the voters referred to, is a material inquiry. The qualifications are prescribed in sections 1 and 4a of article 3 of the Constitution. Section 1 is as follows:

"The qualified electors of the state shall be male citizens of the state, and male persons of Indian descent, native of the United States, who are over the age of twenty-one years, who have resided in the state one year, in the county six months, and in the election precinct thirty days, next preceding the election at which any such elector offers to vote. * * *"

The remaining part of said section has no application to the qualification of the voter under consideration. Section 4a is what is commonly known as the "Grandfather Clause."

It will be observed that the constitutional provision, section 26, article 10, authorizes and sanctions the doing of the things therein named if a given number of the voters of the particular subdivision assents to it, which number is three-fifths, or 60 per cent. thereof.

Section 1625, Rev. Laws 1910, is referred to and discussed by counsel for plaintiffs and defendants in error in their briefs. This section is as follows:

"Whenever the board of county commissioners of any county considers it to be to the best interest of the county to purchase or erect a courthouse or jail, they shall have power to contract for the purchase or erection of same, and to issue bonds in payment therefor: Provided, however, that the bonds shall not be issued until the question shall have first been submitted to the people of the county, and a majority of the qualified property tax-paying voters voting at any general election, or special election called by the board of county commissioners for the purpose, shall have declared by their vote in favor of issuing such bonds. * * *"

We will digress from the discussion for the moment to refer to what was admitted and agreed upon in the statement of facts. At said election 2,524 voters participated; of said number 2,054 were *property tax-paying voters. For the first proposition*

*1,222* property tax-paying voters and *303* nontax-paying voters. *Against* the *first* proposition there were *820* property tax-paying voters and *149* nonproperty tax-paying voters. For the second proposition there were 1,223 property tax-paying voters and *311* nonproperty tax-paying voters. Against the second proposition there were *826* property tax-paying voters and *151* nonproperty tax-paying voters. So it will be seen that the total vote cast *for* the first proposition is *1,525* and *against* it *969*. The total vote *for* the second proposition, is *1,534,* as *against* it 977.

In support of both propositions it is agreed, and the figures so show, that more than 60 per cent. of the total votes cast were in favor of them. It is also agreed, and so shown, that in each instance there was practically a majority of 400 of the property tax-paying voters voting in favor of the bonds and a majority of two to one of the nontax-paying voters *in each instance voted in favor of the bonds.*

The constitutional inhibition is *against* any one of the subdivisions referred to in section 26, article 10, becoming indebted in excess of the income and revenue, etc., and against allowing any indebtedness, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, etc., without the assent of three-fifths of the voters of such subdivision voting at an election for such purpose.

The statute referred to by counsel, section 1625, Rev. Laws 1910, *supra,* provides that "the bonds (referring to those issued by the county for the construction of a courthouse, etc.) shall not be issued until  *  *  *  a *majority* of the qualified tax-paying voters voting at any general election, or special election called by the board of county commissioners for the purpose, shall have declared by their vote in favor of issuing such bonds."

It will be noted that both the constitutional and statutory requirements have been complied with in the submission of the measure now under consideration. This brings us directly to the contention of counsel for plaintiffs in error who seek to obviate, or rather nullify, the effect of the vote as cast, and the conclusion reached by counsel is arrived at in the contention

"that the Constitution fixes the number required and that the statute fixes the qualification of those that vote at the election on that proposition. That so far as the statute attempts to modify the Constitution and require only a majority it is void, but otherwise is valid and binding." In other words, as contended, the constitutional majority of 60 per cent. must be read into the statute, but the remaining part of the statute, including the fixing of the qualification of the voters, is valid. If we understand counsel's meaning, it amounts to this, that we must hold that the 60 per cent. referred to in the Constitution must be interpolated into, or rather, substituted for the word "majority" in the statute, and have it read, in lieu of the way it reads now, "that the bonds shall not be issued until the question shall have first been submitted to the people of the county and *sixty per cent.* of the qualified property tax-paying voters, voting at any general election, etc., shall be necessary to carry the measure."

Counsel for plaintiffs in error proceed, as we think erroneously, to argue that there is a conflict between the provisions of section 26, article 10, of the Constitution and the statute (section 1625) and that to avoid the conflict, as they contend, the percentage of voters required by the constitutional provision should be substituted for the "majority" percentage required by the statute and have it read as we have herein indicated. We deem it unnecessary to repeat the objects aimed at and clearly expressed in section 26, article 10, and to accomplish which requires the *assent of three-fifths of the voters who vote thereon,* as it is to say that the purposes requiring a three-fifths' assent as is mandatory in section 26, *supra,* are altogether different from the objects desired to be done as authorized by section 1625, Rev. Laws 1910. The former is for the purpose of incurring indebtedness in excess of the income and revenue, etc., while the latter (section 1625) provides that "whenever the board of county commissioners of any county considers it to be to the best interest of the county to purchase or erect a courthouse or jail, they shall have power to contract for the purchase or erection of same, and to issue bonds in payment therefor: Provided, however, that the bonds shall not be issued until the

question shall have first been submitted to the people of the county and a *majority of the qualified property* tax-paying voters voting at * * * the election * * * shall have declared by their vote in favor of issuing such bonds. * * * " So it is apparent that the percentage of voters to accomplish the purposes expressed in the constitutional provision is another and different purpose from the power given the county commissioners to contract for the building or purchase of a courthouse and to issue bonds therefor, provided a percentage of a majority of the qualified property tax-paying voters voting shall declare in favor of it, etc. The Legislature in section 1625, Rev. Laws 1910, has not undertaken to prescribe the qualification of the voter, that is, there is no inhibition against the right of any qualified voter under sections 1 and 4a of article 3 of the Constitution to vote, for the proposition is submitted to the people, as there is an inhibition against the bonds being issued unless a "majority" of property tax-paying voters declare for such issuance. The power of the Legislature to restrict the right of suffrage against those whose rights come within the limitations of sections 1 and 4a of article 3 is denied, but as in section 1625 the requirement that a *majority* of those voting on such a matter before such bonds can be issued shall be of the qualified property tax-paying voters, is not a limitation upon the right of suffrage, nor is it a reduction of the percentage of three-fifths or 60 per cent. required by section 26 of article 10 to assent to the indebtedness named therein, as it does mean that of *the total vote cast* it shall be made up of a majority of the qualified property tax-paying voters voting on the matter submitted, and which said *majority* is included in the tabulation resulting in 60 per cent. as assenting. It is admitted in this record that 60 per cent. of the *total votes* cast were for the propositions submitted by the board of county commissioners and that a large majority of the qualified property tax-paying voters voting on such submission voted for the propositions carrying the measures by large majorities as is hereinbefore tabulated, but it is the insistence of plaintiffs in error by learned counsel that before the bonds can be legally issued it is their conclusion asserted in their conten-

tion that it is a prerequisite to the issuance of the bonds that the three-fifths percentage mentioned in section 26, article 10, should be substituted for the word "majority" mentioned in section 1625 of the statute so as to require three-fifths of the qualified property tax-paying voters voting before the measure can be declared as carried. In support of their contention, they rely upon the case of *North et al. v. McMahan,* 26 Okla. 502, 110 Pac. 1115. They urge that it is the holding of the court in that case that the requirement of three-fifths percentage stated in section 26, article 10, could be read into the statute in place of the "majority" there mentioned, and as the provisions of the statute were not in conflict with the Constitution, they were therefore valid. Just by what reasoning counsel have reached the conclusion they have in construing the court's meaning in the case of *North et al. v. McMahan, supra,* is beyond our understanding. In that case the issue there was practically the issue here. The only difference being that the court was passing upon section 1468, Wilson's Rev. & Ann. St. 1903, and the constitutional provision then as now existing; where we are now passing upon the same constitutional provision in connection with section 1625, Rev. Laws 1910. The difference between section 1468 and section 1625 is that section 1468 says, *"a majority of the qualified electors* voting at any general election," etc., whereas in section 1625, *supra,* it states, *"a majority of the qualified property tax-paying voters voting,"* etc. In other words, one statute said "a majority of the qualified electors," and a subsequent statute passed since the North and McMahan case says, a "majority of the qualified property tax-paying voters." On the same point here involved, Chief Justice Turner, in speaking for the court, said in *North et al. v. McMahan, supra* (loc. cit., page 508) :

"In short, said act (referring to section 1468) construed with section 26, *supra,* provides a complete procedure for a special referendum upon this subject, which in this case has been strictly complied with, leaving nothing further to be done to insure the validity of this bond issue, which we will hold valid, the same having been carried by the assent of three-fifths of the voters voting at said election, as required by article 10, sec. 26, of the Constitution, and not by a majority vote of the qualified electors

voting at said election, as required by said act, which is to said extent repugnant to said section, and to that extent must fall."

In the case at bar, the act under consideration construed with section 26, article 10, of the Constitution provides a complete procedure for a special referendum upon this subject, and which, in this case, as in the North and McMahan case, has been strictly complied with. When the learned justice in the excerpt from his opinion just quoted said, "as required by article 10, section 26, of the Constitution, and not by a majority vote of the qualified electors voting at said election, as required by said act, which is to said extent repugnant to said section, and to that extent must fall," he cannot be understood as meaning that the percentage of "three-fifths" of the voters should be interpolated into the statute so as to make it read "three-fifths of the qualified property tax-paying voters." In the opinion referred to, it speaks of the assent of three-fifths of the voters voting at said election, and not three-fifths of the qualified property tax-paying voters, and, in our judgment, no such meaning can be given to the opinion of the court in that case, as counsel contend for. In that case, the point decided there in this connection is that, if the Legislature in section 1468 intended to reduce the percentage of voters necessary to give assent to the adoption of the bond issue there under consideration to a majority of the voters, then such reduction was invalid. The opinion of the court referred to does not mean, nor does it hold, that the constitutional requirement of three-fifths of the voters giving their assent means that it should be three-fifths of the property tax-paying voters. As we have stated, the opinion in the North and McMahan case makes the point very clear, and on that matter the adverse position was that the percentage could be reduced as is stated in section 1468, and if a majority of qualified electors voted it was all that was necessary, and Mr. Justice Turner, speaking for the court, decided against such a contention.

We do not agree with the learned counsel's contention in treating of the matter under consideration when they insist as they do on page 9 of their brief:

"That taking the statute (section 1625) and the Constitution together there must therefore be three-fifths of the qualified property tax-paying voters voting at the election in favor of the proposition before the bonds can be issued."

In the case at bar the sole question for us to determine and which we are determining on this point is, (1) that it is not required nor authorized either by the Constitution or the statute that there must be 60 per cent. of the qualified property tax-paying voters voting at such an election as a condition precedent to the valid issuance of the bonds referred to in the propositions submitted by the board of county commissioners of Marshall county.

Counsel for plaintiffs in error conclude their brief, and which is but a repetition of their contention, in this language:

"Our contention, therefore, is, that the statute, as is seen in section 1625 of the Revised Laws of 1910, should have read into it the provision of the Constitution requiring 'three-fifths' of the voters instead of a 'majority,' but otherwise the statute is valid and should stand. And the Constitution and the statute read together would require *three-fifths of the qualified property tax-paying voters* before the bonds could be issued or the indebtedness incurred."

To adopt this view would be in opposition to every well known rule of construction and have us reach a conclusion in the face of the meaning clearly stated in both the organic and statutory law of this state. We are not called upon to make a constitutional provision fit a statute, or so patch it as to make it subserve individual opinion, nor should we, by construction, mar the harmony of organic law or quibble over a statutory provision not in conflict therewith. The construction given the constitutional provisions of this state on this subject renders unnecessary a further consideration of the authorities cited by plaintiffs in error.

In the construction of a courthouse all of the people, and especially *all of the voters,* are interested and the Constitution guarantees to the voter the right to vote, and for this purpose, whether they be of the fortunate class who own property, or of the unfortunate class who do not own property, his vote in the

ballot box is as potent as though he were a Croesus, and it should be counted as cast.

The conclusion we have reached being decisive of the case, it is unnecessary for this opinion to be extended by noticing other matters that are subordinate to the one discussed, and which is held to control. We, therefore, hold that the judgment of the district court of Marshall county is affirmed, and that the defendants in error should be no longer inhibited in performing the duties imposed upon them and sought to be enjoined and delayed by the action brought in this matter.

All the Justices concur.