## *In re* BONDS OF CITY OF GUTHRIE.

No. 4281.    Opinion Filed November 26, 1912.

Rehearing Denied February 25, 1913.

(130 Pac. 265.)

MANDAMUS—Issue of Bonds—Public Utility.   Where, with the proceeds of bonds issued pursuant to section 27, art. 10, of the Constitution, a bridge is intended to be constructed upon a street closed to traffic to enable the city to acquire land upon which to erect abutments, and opened again to traffic after the same is completed, the approaches over its tracks to be supplied and owned by a railroad, held that, as the proposed structure, when completed, would be a street improvement, and not a public utility owned exclusively by the city, within the meaning of said section and article, the Bond Commissioner will not be required by mandamus to approve said bonds.

(Syllabus by the Court.)

Dunn, J., dissenting.

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

In the matter of the submission of the agreed case on the issuance of bonds by the City of Guthrie.  From a judgment directing the approval of the issuance, the Bond Commissioner brings error.  Refusal to approve bonds affirmed.

*Chas. West,* Atty. Gen., for appellant.

*D. M. Tibbetts,* City Atty. of Guthrie, for appellee.

TURNER, C. J.   On July 18, 1912, pursuant to ordinance No. 1302, passed by the mayor and board of commissioners of the

city of Guthrie, a city of the first class, and a proper election proclamation; there was, at an election held for the purpose of issuing public utility bonds pursuant to the provisions of section 27, art. 10, of the Constitution, submitted to the qualified property taxpaying voters of said city the proposition:

"Shall the city of Guthrie, Logan county, state of Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds of the aggregate principal sum of $25,000 for the purpose of providing funds to purchase a site and construct a bridge across the Cottonwood river in said city of Guthrie, such site and bridge to be owned exclusively by said city, and levy and collect an annual tax, in addition to all other taxes upon all of the taxable property in said city sufficient to pay the interest on said bonds as it falls due and also constitute a sinking fund for the payment of the principal thereof when due; said bonds to bear interest at a rate not to exceed five per cent. per annum, payable semiannually, and to become due 25 years from their date?"

After said bonds had been issued by the city, the same were presented to the Bond Commissioner of the state for his approval, pursuant to act of March 24, 1910 (Sess. Laws 1910, c. 94), which he refused to do, "for the reason that the purpose for which the money is to be borrowed is not a public utility, within the meaning of said section," or, in other words, that the same were not public utility bonds. From a judgment of the district court of Oklahoma county, rendered and entered August 16, 1912, requiring him to approve said bonds, the Bond Commissioner brings the case here, and assigns for error that said judgment is contrary to law.

Although the proposition thus submitted fails to disclose the location of the bridge referred to therein, it is disclosed by the record that, within the limits of the city, Noble avenue runs east and west, and, after crossing the Santa Fe tracks and right of way at a right angle, is carried over the Cottonwood river by a bridge. To replace this bridge with the proceeds arising from a sale of the bonds, it is the intent of the city:

" * * * To secure lots on each side of Noble avenue, and on both sides of the Cottonwood river, in such way that, upon the street being vacated, the fee to the street, from a short distance within the river bank across the river to a short distance east of the river bank, would vest absolutely in the city, thus

giving it exclusive ownership of a tract of ground which could be improved by the construction of a public utility, to wit, a bridge; both site and bridge to be owned exclusively by the city. The bridge would not cross a railroad track or any part of the railroad right of way, but would stand for its entire length upon property owned exclusively by the city. The tracks and right of way on each side of the bridge could then be crossed by viaduct approaches, to be constructed by the Santa Fe Railway Company, in such way as to be used in conjunction with the bridge constructed by the city."

After this is accomplished, it is the further intent to open Noble avenue for traffic across this bridge.

On behalf of the city, it is first contended that, the proceeding being fair on its face, it is the duty of the Bond Commissioner to approve the bonds, and that he has no right to inquire into the use to which the money arising from their sale is to be put. It would seem that, inasmuch as we have held in *State ex rel. Edwards v. Millar, Mayor, et al.,* 21 Okla. 448, 96 Pac. 747, the question of whether the provision made for the payment of interest and the creation of a sinking fund, in compliance with the requirements of law, was a proper question to be raised by the mayor and city clerk of Norman, when they were sought to be compelled by mandamus to execute a certain issue of waterworks and sewer bonds under this provision of the Constitution, and a like question was raised and answered in *State ex rel. v. Allen,* 183 Mo. 283, 82 S. W. 103, the Bond Commissioner had a right to withhold his approval of these bonds for the reason he has assigned. But let that be as it may; it being addressed to our sound legal discretion whether we will issue or withhold the writ, we will withhold it if, from the record, we are of opinion that the money arising from the sale of these bonds, if approved, will be expended by the city in erecting other than a public utility within the contemplation of said section and article of the Constitution. This was, in effect, the attitude of the court in *Dingman v. City of Sapulpa,* 27 Okla. 116, 111 Pac. 319. There, as here, so far as the record discloses, the proceeding was fair on its face; but the mayor and clerk were enjoined from issuing the bonds. The only question involved was conceded to be not whether a bridge sought to be constructed upon

the street of a city with the proceeds of a bond issue, as here, was a public utility, but whether approaches to viaducts sought to be constructed upon such streets, with the proceeds of a similar bond issue, were public utilities. In that case the court, being of the opinion that such they were not, enjoined the mayor and clerk as prayed. And so, we repeat, we will refuse to mandamus the Bond Commissioner to approve these bonds, if the proposed structure in our opinion is not a public utility. The question, then, before us is whether the structure sought to be erected from the proceeds of the bonds will be a public utility when erected.

As stated, for the purpose of constructing this utility, it is the intention of the city to vacate Noble avenue in order to acquire title to sufficient land, in the vacated street, on both sides of the stream, upon which to erect abutments. This, we take it, so that it may be said that the utility, when constructed, is a public utility, owned exclusively by the city. But, as the same would be useless erected upon a closed street, it is the further intent of the city, upon completion of the utility, to again open Noble avenue to traffic, after the Atchison, Topeka & Santa Fe Railway Company has erected approaches thereto over its tracks.

The proposed structure is nothing more nor less than a street improvement; and that such are not public utilities, within the contemplation of the section and article, *supra,* is no longer an open question in this jurisdiction. We held this in *Coleman v. Frame,* 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556. In that case the city attempted, among other things, to issue public utility bonds to pave its street crossings. But the court held that such could not be done, as the same, being a street improvement, was not a public utility owned exclusively by the city. If in that case the city had proposed to first close the street, and then purchase the intersections from the abutting property owners and pave them with the proceeds of the bond issue in question, and then reopen the street, the precise question here presented would have been there decided. It goes without saying that the city here will not be permitted to do indirectly what the city there was not permitted to do directly. The reason for the holding there was that the pavement, when completed at the intersections,

would not and could not be owned exclusively by the city. The same is true as to the bridge here in question. This for the reason that, after the spans tower aloft on their abutments, it is the purpose of the city, not to supply the approaches, but leave them to be supplied by the railroad company and carried over its tracks at both ends of the structure. As a bridge is not a bridge, but is useless, without approaches, so this bridge would not be completed and ready for use until these approaches were supplied. This being true, to say that this bridge would be, when completed, a public utility, owned exclusively by the city, would no more be true than it would be to say that a chair is owned exclusively by one person when another owns its legs; that a passenger coach is owned exclusively by one company when another owns the steps and platform; or that a sword is owned exclusively by one person when another owns the hilt.

We are therefore of opinion that the Bond Commissioner was right in refusing to approve these bonds. This for two reasons: First, because the money arising from their sale is intended to be used for street improvements; and, second, that the proposed utility, when completed, would not be owned exclusively by the city.

The writ is denied.

HAYES and KANE, JJ., concur; WILLIAMS, J., concurs in the result; DUNN, J., dissents.