## In re ISSUANCE OF BONDS BY CITY OF MIAMI.

No. 5909.   Opinion Filed July 14, 1914.

(141 Pac. 1174.)

**MUNICIPAL CORPORATIONS—Approval of Bonds—Bridges—"Public Utility."**   Where, with the proceeds of bonds issued by a city pursuant to the provisions of section 27, art. 10, of the Constitution it is purposed to purchase a bridge across a stream between a city and a township, to be owned jointly by such city and the township, held, that such bridge would not be a public utility owned exclusively by the city within the terms of said section and article, and the bond commissioner will not be compelled to approve such bonds.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

In the matter of the submission of controversy as to the issuance of bridge bonds 1913 by the City of Miami. From a judgment that the bond commissioner do not approve said bonds, the city brings error. Affirmed.

*A. C. Wallace,* City Atty., for appellant.

*Chas. West,* Atty. Gen., and *Jos. L. Hull,* Asst. Atty. Gen., for appellee.

BLEAKMORE, J.   For the purpose of issuing bridge bonds pursuant to the provisions of section 27, art. 10, of the Constitution of Oklahoma, the city of Miami, by virtue of an ordinance duly passed by the mayor and board of commissioners, submitted to its qualified property taxpayng voters this proposition:

"Shall the mayor and board of commissioners of the city of Miami, Ottawa county, state of Oklahoma, issue the bonds of the city of Miami, in the county of Ottawa, state of Oklahoma, in the aggregate sum of eighty-nine hundred dollars ($8,900), to run for ten years from the date thereof, bearing interest at the rate of five per cent. per annum, payable semiannually, for the purpose of obtaining money to jointly purchase, by condemnation or otherwise, with Narcissa township, Ottawa county, Okla., the toll bridge and franchise of the Miami Toll Bridge Company and all appurtenances thereto belonging, including right of way and approaches, and for the further purpose of constructing and building, jointly with said township, an approach to said bridge on the west side thereof, said bridge, approaches, and appurtenances to be jointly owned and maintained by the city of Miami and Narcissa township and definitely located as follows, to wit.   *   *   *"

An election was regularly held, and said proposition received the assent of the requisite number of voters.   The bonds were issued and presented to the bond commissioner, who refused to approve the same, for the reason that the purpose for which the money is to be borrowed is not a public utility within the meaning of section 27, art. 10, of the Constitution, and for other reasons. The matter was submitted to the court below upon an agreed case, and from the holding of that court adjudging that the bond commissioner do not approve said bonds, the city appeals.

It is stipulated in the agreed case that:

"Said city of Miami is and was indebted at the time the bonds herein were voted in excess of the amount prescribed by section 26, art. 10, of the Constitution."

The section of the Constitution pursuant to which said bonds were voted, provides:

"Sec. 27.   Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than

that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city. * * *"

The only material question necessary to a determination of this case is whether the bridge sought to be purchased is a public utility "*to be owned exclusively by such city.*" We hold that it is not.

The question was before this court in *Coleman v. Frame*, 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556, wherein it was held by Mr. Justice Kane:

"Granting that streets and street improvements are public utilities, it does not follow that they are the class of public utilities referred to in said section. To fall within the meaning of the term as there used, they must not only be public utilities, but they must also 'be owned exclusively by said city.'"

*In re Bonds of City of Guthrie*, 35 Okla. 494, 130 Pac. 265, it was held by Mr. Chief Justice Turner:

"The reason for the holding there [referring to *Coleman v. Frame, supra*] was that the pavement, when completed at the intersections, would not and could not be owned exclusively by the city. The same is true as to the bridge here in question. This for the reason that, after the spans tower aloft on their abutments, it is the purpose of the city, not to supply the approaches, but leave them to be supplied by the railroad company and carried over its tracks at both ends of the structure. As a bridge is not a bridge, but is useless, without approaches, so this bridge would not be completed and ready for use until these approaches were supplied. This being true, to say that this bridge would be, when completed, a public utility, owned exclusively by the city, would no more be true than it would be to say that a chair is owned exclusively by one person when another owned its legs; that a passenger coach is owned exclusively by one company when another owned the steps and platform; or that a sword is owned exclusively by one person when another owned the hilt."

It follows, therefore, that, as the bridge purposed to be purchased would be owned jointly with the township, and not exclusively by the city, the judgment of the court below should be affirmed, and it is so ordered.

All the Justices concur.