## DUNAGAN *et al.* v. TOWN OF RED ROCK *et al.*

No. 7292.   Opinion Filed May 16, 1916.

Rehearing Denied July 19, 1916.

(158 Pac. 1170.)

1. **ELECTIONS—Contests—Burden of Proof.** Where an election is held by duly appointed officers, the presumption is that the votes received and counted by them are legal, and the burden is on the party attacking the same to show their illegality.

2. **SAME.** Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient

number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast.

3. **SAME—Evidence.** Evidence tending to show that certain voters were reputed as favorable to a particular proposition voted upon at a special local election, and that one of them, the editor of a local newspaper, throughout the columns of his paper supported said proposition, is incompetent to prove how said voters in fact voted.

4. **CONSTITUTIONAL LAW—Self-Executing Provisions—Municipal Indebtedness—Constitutional Limitation.** Section 27, art. 10, of the Constitution, is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in section 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city.

5. **MUNICIPAL CORPORATIONS — Indebtedness — Limitation — "Public Utility."** A public waterworks system, to be owned exclusively by an incorporated city or town, is a "public utility" within the meaning of the term as used in section 27, art. 10, of the Constitution.

(Syllabus by the Court.)

*Error from District Court, Noble County; W. M. Bowles, Judge.*

Suit by R. N. Dunagan and others, taxpayers of the incorporated town of Red Rock, against the Town of Red Rock and others, to enjoin the execution, issuance, and delivery of $22,000 in municipal bonds, voted at a special election for waterworks purposes. From a judgment for defendants, plaintiffs bring error. Affirmed.

*W. E. Rice, L. B. Robinson,* and *Henry S. Johnston,* for plaintiffs in error.

*P. W. Cress,* for defendants in error.

SHARP, J. The errors assigned and relied upon for a reversal are that the court erred in its finding and decision that E. L. Hubbard and Clyde Cady were qualified

property taxpaying electors at the town election; and that the election was illegal and void, for that all but qualified property taxpaying voters were barred from voting there- at; and that on account of said errors the court erred in overruling plaintiffs' motion for a new trial.

At the election the vote on the bond issue, as canvassed by the election officers, stood 29 votes for and 28 votes against the proposition. It is urged that, neither Hubbard nor Cady being at the time of the election "qualified property taxpaying voters of such town," the proposition involving the issuance of said bonds failed to secure a majority of the votes cast. But counsel in their zeal have overlooked the fact that the record does not disclose that either of these voters voted in favor of the bond issue, and for aught that appears, their ballots may have been cast against the proposition. To warrant setting aside the election, it must affirmatively appear that these votes, if illegal, were cast in favor of the issuance of the bonds. The mere circumstance that improper votes were received is not, of itself, sufficient to vitiate the election. It is not enough to say that illegal votes were cast; it must be shown that a sufficient number of such votes were cast for the successful issue or proposition to change the results. *Tarbox v. Sughrue*, 36 Kan. 225, 12 Pac. 935; *People v. Cicott*, 16 Mich. 283, 97 Am. Dec. 141; *Judkins v. Hill*, 50 N. H. 140; *Skain v. Milward*, 138 Ky. 200, 127 S. W. 773; *Stephens v. Nacey*, 49 Mont. 230, 141 Pac. 649; *Ex parte Murphy*, 7 Cow. (N. Y.) 153. When an elector is permitted to deposit his ballot, the presumption is in favor of the legality of the vote, and the burden is on the attacking party to show a lack of qualification in such elector. *Snyder v. Blake*, 35 Okla. 294, 129 Pac. 34; *Ledbetter v. Kimsey*, 38 Okla. 671, 134 Pac. 868; *Storm v. Parman*, 43

Okla. 495, 143 Pac. 38; *Gumm v. Hubbard*, 97 Mo. 311,°
11 S. W. 61, 10 Am. St. Rep. 312; McCrary on Elections
(4th Ed.), sec. 466a. Where an election is brought under
review, on the ground of illegal voting, those attacking the
election have the burden, not only of proving that illegal
votes in sufficient number to change the result were cast,
but they must show by whom and for whom they were
cast. *Harris v. Palmer*, 25 Okla. 770, 108 Pac. 384;
*Tazwell v. Davis*, 64 Or. 325, 130 Pac. 400; *Lippincott v.
Felton*, 61 N. J. Law, 291, 39 Atl. 646; *Blake v. Hagon*, 57
Minn. 45, 58 N. W. 867; The Law of Elections, Paine, secs.
510-513.

Both Hubbard and Cady testified as witnesses for the
plaintiffs below, and it does not appear that any claim was
made by them, or objection offered, respecting their right
to testify concerning their vote. Neither does it appear
that their right to vote was challenged or questioned until
after the result of the election became known. That the
Red Rock Record, of which Hubbard was the editor,
through its columns favored the issuance of the water-
works bonds is no evidence whatever that Hubbard voted
in favor of the bond issue. Elections will not be over-
turned and the will of the people defeated by such char-
acter of incompetent testimony. There was no reasonable
effort made by the plaintiffs to show how either Hubbard
or Cady voted; and, even though they were reported as
favorable to the proposition, we will not indulge the pre-
sumption that they in fact voted for it, when to do so
would defeat the declared result of an election, otherwise
fairly and legally conducted.

There is little difficulty in meeting the objection that
none but qualified property taxpaying voters were per-
mitted to take part at such special election. The issuance

of the bonds in the sum of $22,000 was to provide funds for the purpose of constructing and equipping a waterworks system for the town of Red Rock, to be owned and controlled exclusively by said town. The position of counsel for plaintiffs in error appears to be that, under the authority of *Faulk v. Board of County Commissioners*, 40 Okla. 705, 140 Pac. 777, the proposition of the issuance of the waterworks bonds should have been submitted to all the electors of said town. In that case the court had under consideration section 26, art. 10, while here, if a system of municipal waterworks is a public utility, within the meaning of section 27, art. 10, of the Constitution, then it is obvious that the provisions of the latter section in respect to the qualifications of voters and the vote necessary must govern.

We have had frequent occasion to decide what constituted a public utility within the meaning of the Constitution. In *State ex rel. Edwards v. Millar, Mayor*, 21 Okla. 448, 96 Pac. 747, sewers were held to be a public utility. In *State ex rel. Manhattan Const. Co. v. Barnes, Mayor*, 22 Okla. 191, 97 Pac. 997, a convention hall, owned, controlled, and used exclusively by the city, to accommodate public gatherings of the people of the city, and for such other purposes as might be designated by the city authorities, was held a public utility. In *Barnes, Mayor, et al. v. Hill*, 23 Okla. 207, 99 Pac. 927, and *City of Ardmore v. State ex rel. Best*, 24 Okla. 862, 104 Pac. 913, public parks were held to be public utilities. In *Coleman v. Frame, County Clerk*, 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556, it was held that the term "fire department improvements" may include items of public utility, but that it also includes others that are not; that all such property purchased and to be exclusively owned by the

city may well be classed as public utilities. In *Oklahoma City et al. v. Edwards,* 28 Okla. 780, 115 Pac. 1108, bonds for the purpose of erecting and equipping public fire stations and purchasing equipment therefor, to be devoted to the public use, and to be owned exclusively by the city, were held to be embraced within the term "public utilities." An electric light plant, to be owned exclusively by the city, was held, in *City of Woodward v. Raynor,* 29 Okla. 493, 119 Pac. 964, to constitute a public utility. Street improvements were held not to be public utilities, within the meaning of the Constitution, in *Coleman v. Frame, supra; Hooper, Mayor, v. State ex rel. Cline,* 26 Okla. 646, 110 Pac. 912, and *Dingman v. City of Sapulpa,* 27 Okla. 116, 111 Pac. 319; while *In re the Issuance of Bonds by the City of Miami,* 43 Okla. 205, 141 Pac. 1174, a bridge across a stream between the city and a certain township, to be owned by such city and the township, was held not to constitute a public utility.

Considering the public use for which it is intended and to which, when installed, it is put, a public waterworks system, to be owned and controlled exclusively by an incorporated town or city, is a public utility, within the meaning of section 27, art. 10, of the Constitution. What constitutes a public utility, generally speaking, was considered at some length by Mr. Justice Hayes, in *State ex rel. Manhattan Const. Co. v. Barnes, Mayor, supra,* and we shall not attempt to add at any length to what is there said. A system of waterworks, owned by a municipal corporation, has a relation directly to public purposes, and for the public, and appertains to the corporation in its political or governmental capacity. It is subject to the exclusive control of the town or city, and for the convenience, health, and general welfare of the inhabitants and

property owners of the municipality. The town or city determines the source of the water supply, the amount of water mains, where to be laid, and the number and location of the fire hydrants, and other details of the water system. Over it the individual has no control. That water may be furnished inhabitants of a town or city, for private domestic purposes in no wise affects the character of a public waterworks as a public utility. Having thus determined, it is only necessary to add that only "qualified property taxpaying voters" of the incorporated town of Red Rock were entitled to vote at the election in question. As held in *State ex rel. Edwards v. Millar, Mayor, supra,* section 27, art. 10, of the Constitution, is a self-executing grant of authority to the qualified property taxpaying voters of a city or town, voting at an election held for that purpose, by a majority vote, to become indebted in a larger sum than that specified in section 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city or town. Plaintiffs in error having planted themselves upon the broad language of the Constitution, giving to "a majority of the qualified property taxpaying voters" of an incorporated city or town, voting at an election to be held for that purpose, the right to become indebted as and for the purposes provided in section 27, art. 10, a construction of section 1 of the act of May 8, 1913 (Sess. Laws 1913, p. 388), or its constitutionality, is not made necessary or involved; hence is not determined. The only errors assigned we have already shown in the beginning of this opinion. We may add, however, that it appears both Hubbard and Cady had tax receipts, each dated within 12 months prior to the election.

As the public waterworks system, proposed to be installed by the municipal authorities of the town of Red Rock, is a public utility, and as the bond issue has received a majority of the legal votes cast at said election, it follows that the judgment of the trial court should be affirmed.

All the Justices concur, except THACKER, J., not participating.