## BOARD OF ED. OF TOWN OF OWASSO v. SHORT, Atty. Gen.

No. 13656—Opinion Filed March 13, 1923.

(Syllabus.)

1. **Schools and School Districts—Bonds—Limitations.**

The authority of school districts to issue bonds is found in article 10, ch. 74, Rev. Laws 1910, limited by section 26, art. 10 of the Constitution of the state. The said constitutional provision places a 5 per cent. debt limitation upon municipal subdivisions, including school districts.

2. **States—Duties of Bond Commissioner.**

Section 377, Rev. Laws 1910, provides that it shall be the duty of the bond commissioner to prepare uniform forms, and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds in any county, township, political or other subdivision thereof, and provides a further duty "to examine into and pass upon" any securities so issued. In performing his duties under the provisions of said section. he is not confined to determination of whether or not the forms of procedure have been complied with, but he may examine into all the facts and the conduct of the officers, as to the good faith performance of their duties incident to such issue imposed upon them by law.

3. **Mandamus—Official Discretion.**

In the performance of his duties as such bond commissioner, the Attorney General does not act in merely a ministerial capacity, but rather is vested with the exercise of judgment and discretion.

4. **Mandamus—Performance of Official Duties.**

A ministerial duty, the performance of which may in proper cases be required by judicial decision. is one in respect to which nothing is left to discretion. That is. where

the law prescribes and defines the duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment, the action required of the officer is said to be ministerial; but where the act to be done under the statute involves the exercise of discretion or judgment, the same cannot be said to be purely ministerial.

### 5. Same.

Although, ordinarily, it is held mandamus will not lie to compel the performance of the duty of an officer not purely ministerial, but in which he exercises judgment and discretion, yet this is not entirely accurate; mandamus, in the absence of other remedy, in an otherwise proper case, may be issued to correct an abuse of discretion, or to compel action where the officer is vested with judgment and discretion, but this action or refusal to act is arbitrary. In a case where there are no disclosures or controverted facts to call for the exercise of discretion and judgment, or in a case where he must exercise judgment and discretion, but he acts arbitrarily, or fraudulently, the writ may be issued to require a proper performance of his duties.

### 6. Same—Compelling Bond Commissioner to Approve School Bonds.

Where the petition of the relator seeking a peremptory writ of mandamus against the Attorney General as the bond commissioner of the state, compelling him to certify to and approve an issue of $66,500 by a school district, recites that said issue is $7,000 in excess of the constitutional limitation of 5 per cent. of the assessed valuation of the property of the district, this makes it the duty of the Attorney General to refuse to approve the said issue in any amount. Such bond issue in excess of the constitutional limitation (section 26, art. 10, Williams' Constitution) cannot be sustained, except where the amount of the issue in its entirety, as submitted to the voters, falls within the constitutional 5 per cent. of the taxable property of the municipality.

### 7. Same.

In examining into and passing upon bond issues, the Attorney General, as bond commissioner, should look not only to the form of the law, but should determine whether or not the indebtedness sought to be incurred finds sanction in the limitations of the Constitution and statutes. If it develops that the same does not, or that any step in the procedure of the officers of the municipality was not carried out in good faith, resulting in the intended effect that a large per cent. of the voters in the district affected should have no knowledge of the pending election, and no opportunity to express their will as to the proposed bond issue, it is the duty of the bond commissioner to refuse to approve the same, and no mandamus will issue, unless his determination and conclusions are so foreign to the facts that his action amounts to an arbitrary refusal to properly perform the duties of his office.

Error from District Court, Oklahoma County; A. C. Brewster, Assigned Judge.

Mandamus by the Board of Education of the Town of Owasso against George F. Short, Attorney General. Writ refused, and plaintiff brings error. Affirmed.

J. I. Howard and A. M. Beets, for plaintiff in error.

George F. Short, Atty. Gen., Randall S. Cobb, Asst. Atty. Gen., and Frank Ertell, for defendant in error.

BRANSON, J. This is an appeal from an order and judgment of the district court of Oklahoma county, denying the prayer of the plaintiff in error for a writ of mandamus against the defendant in error, requiring him to approve a bond issue in the sum of $66,-500 for school building purposes in the school district embracing the town of Owasso.

On the 7th day of May, 1921, a purported election was held within and for the school district in question, in which election 14 votes were cast, all in favor of the proposed bond issue.

Protest was made that the indebtedness of the municipality in question was such that section 26, art. 10, of the Constitution of the state, prescribing a debt limit of 5 per cent., would not permit a bond issue in the sum alleged to have been voted, but that the maximum would not exceed $59,500 which could at that time be incurred by said school district.

The protests also show that an enumeration of the electors of said district disclosed approximately 562, and that two elections had been theretofore held on the question of issuing bonds for the same purposes, at both of which elections the bonds had been defeated, and that at each of said prior elections over 300 electors had voted. That throughout the district affected the interest of the voters was aroused and rumors became current that a third election would be called and held by the members of the school board, and that said election would be secret. That a large number of citizens were on the alert, lest this rumored intention might be carried into effect. That the fact of the holding of such an election on the said above mentioned date, if advertised, was done in such manner as to make the election secret, and said election was in fact not known to the electors of the district.

The record discloses that the transcript of the proceedings filed with the Attorney General in all respects complied with the forms of procedure provided by law and by the

Attorney General of the state of Oklahoma. A short time after the officials of the said school district filed the said transcript with the Attorney General more than 200 affidavits were filed with him, setting out the above grounds of protest, and further saying, in effect, that the election in no wise represented the expression of the electors of said district at an election held after fair and honest notice given in contemplation of the statute, and that the electors were not aware that such a purported election had been held until approximately four months after May 7, 1921; that none of them ever saw or heard of the notices being posted, or of such an intended election.

The record discloses that the Attorney General made a further investigation, after which he notified the officers' of the said school district that he had reached the conclusion that the election held to authorize the bond issue in the Owasso school district was secret and contaminated with legal fraud, and that the bond issue would not be approved. Whereupon the relator began this action by filing a petition in the district court of Oklahoma county against S. P. Freeling, as Attorney General, praying an alternative writ of mandamus against the said Attorney General, in which, among other things, it was recited:

"That there was filed with said Attorney General a full and complete transcript of all of the proceedings with reference to the issuance of said bonds, including the petition for the election, minutes of the board of education for the purpose of considering said petition, the enumeration of said school district, which included a list of all the qualified electors residing in said district between the ages of six and 21 years, as of the 15th day of February, 1921; notice of the school district bond election, copy of official ballot for said election, the poll books, a list, number and names of electors voting in said election, the certificate of the board of education as to the canvass of said ballots and the result thereof as shown by the minutes of the meeting of said board held for that purpose, resolution of the board of education providing for the issuance of said bonds so voted, the form of the bond, form of the coupon, the statement of the valuation and financial condition of said district, amount of the outstanding warrant and bonded indebtedness of said district, the county clerk's certificate of the registration of said bonds; a full, true and complete plat of said school district, a certificate of the board of education with reference to the proceedings had in connection with said election, the certificate of the county superintendent of Tulsa county (being one of the counties in which said school district is located) as to the genuine signature of the

school district officers, a certificate of the county attorneys of Tulsa and Rogers counties, the certificate of the county superintendent of Tulsa county as to who were the members of the board of education of said district and the various signatures, certificates of the county officers authorized to certify to said bonds, all of said above described and foregoing proceedings being duly certified to by the officer having the custody of the records and authorized to certify to the same."

An alternative writ was issued, and served upon the respondent. Prior to the trial of the cause, the said S. P. Freeling resigned as Attorney General of the state, and George F. Short succeeded him, and, having consented, was substituted by order of the court as respondent herein.

The respondent waives the incorrect designation of the plaintiff. (Section 7779, Rev. Laws 1910.)

The respondent filed an amended answer, setting out as an exhibit thereto copies of the proceedings filed with him, which show that the allegations of the relator's petition and the recitations in the alternative writ are correct, and that the forms of procedure were in fact complied with by the officers of said school district. The relator in its petition, among other allegations as to the transcript filed with the Attorney General, says:

"That said transcript of said proceedings disclosed that all of the proceedings with reference to the issue of said bonds, as aforesaid, were in strict compliance with the Constitution and laws of the state of Oklahoma relating thereto, except that said bond issue was in excess of the constitutional limitation to the amount of $7,000, and that it thereupon became and was the duty of the defendant herein, as Attorney General of the state of Oklahoma, to duly approve and certify to the said bonds in the sum and to the amount of $59,500."

On the trial of this cause, the district court denied the writ, and thereupon the plaintiff appealed to this court, and for the reversal of this cause the plaintiff in error made two assignments, which are, in brief:

First. That the trial court erred in overruling the motion of the plaintiff for a peremptory writ of mandamus, commanding the respondent to approve and certify the bond issue.

Second. The court erred in finding that, under the pleadings and evidence in the cause, the motion of the plaintiff for the peremptory writ should be denied.

The respondent's amended answer is lengthy, but, epitomized, says that the pur-

ported issue was $7,000 in excess of the constitutional limitation; that the transcript of the proceedings were regular in form, but irregular in substance, and do not speak the truth, in that the notice required by law to be given, and proof of posting of which is incorporated in the transcript, was not in fact given as by law required, resulting in the lack of knowledge on the part of the electors of the district, and that the election as a result thereof was secret and fraudulent, and that the duty placed on him by the statute, to inquire into such issues and determine whether the Constitution and laws of the state have been followed, was performed by him in his own manner and method, and that, having reached the conclusion that the law of the state requiring publicity to be given in the school district had not been followed in good faith by the officers charged with the duty of giving notice, the election was a fraud upon the electorate, was in excess of the constitutional limitation of indebtedness for said district, and while these did not appear in the transcript, they clearly developed on his investigation, and he therefore refused to approve the same.

On March 24, 1910, an act of the Oklahoma Legislature became effective, now found in sections 376, 377, 378, Rev. Laws 1910. The act provides:

"Sec. 376. The Attorney General is hereby made ex-officio bond commissioner of the state of Oklahoma.

"Sec. 377. It shall be the duty of the bond commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds in any county, township, municipality, or political or other subdivision thereof; and it shall be the further duty of the said bond commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of said bond commissioner to be issued in accordance with the forms of procedure so provided, shall be incontestable in any court in the state of Oklahoma, unless suit thereon shall be brought in a court having jurisdiction of the same within 30 days from the date of the approval thereof by the bond commissioner.

"Sec. 378. No bond hereafter issued by any political or municipal subdivision of this state shall be valid without the certificate of said bond commissioner."

Counsel for relator and respondent each agree if the bonds are not approved, or if the court refuses to compel the bond commissioner to approve the same, his failure to

so act or be required to act must find its source of justification in the said legislative provisions.

The plaintiff in error in its brief says as to the duty of the bond commissioner under that statute above set out:

"He is required to do two things: First, to examine into and pass upon any security so issued. Second, after he has done that, to issue his certificate, that said bonds have been issued in accordance with the forms of procedure so provided. That is, all the Attorney General is required to do with reference to the issue of the bonds is to place his certificate on the bonds that they have been issued in accordance with the form of procedure so provided. * * * The purpose of the act is to make a bond in the hands of a purchaser incontestable, unless its validity has been attacked in a court of competent jurisdiction within 30 days after the Attorney General certifies * * * that it has been issued in accordance with the forms of procedure provided by the law of the state of Oklahoma."

This we think is a brief statement of the position of plaintiff in error, and the remainder of its brief is a forceful argument directed at this conclusion.

We do not agree that it was the purpose and intent of the Legislature that the Attorney General should be clothed with the power and authority to look only to the compliance with the forms of the law in matters of such vital concern to the municipal subdivisions of the state, but we think rather that the Legislature put the duty upon him "to examine into and pass upon" any securities so issued, to the extent of determining whether or not the indebtedness sought to be incurred found sanction in the limitations of the Constitution and complied with the procedure of the law, both as to the forms thereof, and as to the good faith of the officers charged with the duty, in the various subdivisions, of doing the things known and referred to as the "forms of procedure."

We agree with the plaintiff in error that the act sought to make a bond issue in the hands of a purchaser incontestable, but not "incontestable unless its invalidity has been attacked in a court of competent jurisdiction within 30 days after the Attorney General certifies that it has been issued in accordance with the forms of procedure provided by the law of the state," but shall be incontestable after,

First, the Attorney General of the state has "examined into the same," and has certified that the same has been issued in accordance with the procedure; and,

Second, that no contest has been instituted in the courts within 30 days thereafter.

To what extent the Attorney General shall make his examination is a matter which the Legislature left to him. On what he bases his action is a matter resulting from a procedure of his own initiative. Whether on a strict compliance with the forms of procedure, or compliance in good faith with the substance, intent, and wholesome purpose of each statute constituting a step in the procedure, is left to his own conscientious administration of his duty as a trusted high officer of the state. When he refuses to approve an issue, on grounds underneath the mere forms of procedure, which go to the lack of good faith of public officials in giving the public notices of the election on the proposed bond issue, and his conclusions are neither capricious nor arbitrary, no mandamus should be issued to compel him to act. To do so would make the respondent accessory after the fact to the fraud. If no one saw fit to incur the burden of an extended fight in the courts within 30 days, a bond issue based on such a known condition would find its foundation in fraud in fact, capsuled by technical compliance with forms.

The statute doubly guards the securities, not only for the safety of the investing public, but also for the protection of the taxpayers of the municipality. The Attorney General is not merely a judge as to form, but also as to the procedure which is the body of the law on bond issues. If he finds fraud, want of good faith, or gross failure to comply with the purpose, intent, and substance of the statute, though there may be a technical compliance with the forms of procedure, certainly the provisions of the law will not be fulfilled by saying in effect—"Though you may find it fraudulent in fact, the transcript shows a compliance with the forms of procedure, and the courts are open for 30 days. Let the fraud stand, unless some taxpayer is brave enough to enter the fight within the time limit."

Counsel for plaintiff in error say in their brief that the Attorney General, in performing his duty as bond commissioner, "acts in a purely administrative or executive manner." This would indicate that counsel contend that in performing his duties as bond commissioner, the Attorney General's acts are executive in their nature. Again, counsel for plaintiff in error in their brief say:

"The question of fraud * * * is never a ministerial question to be decided."

This indicates that their contention is that the Attorney General, as bond commissioner, acts in a ministerial capacity.

No doubt the Attorney General is an executive officer, but duties may be imposed upon him by the Legislature the performance of which is not purely executive or administrative. Ministerial and executive are by no means equivalent in import.

In the case of State v. Johnson, 18 L. Ed. (U. S.) 440, the Supreme Court of the United States said:

"A ministerial duty, the performance of which may in proper cases be required of the head of a department by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." (Marbury v. Madison, 1 Cranch, 137; Kendal v. U. S., 12 Pet. 527.)

The distinction between merely ministerial and judicial, and other official acts, is this, in effect: That where the law prescribes and defines the duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment, the action of the officer is said to be ministerial; but where the act to be done under the statute involves the exercise of discretion or judgment, it is not to be construed merely ministerial. Ex parte Harris (Ala.) 23 Am. Rep. 559; State v. Crawford (Fla.) 10 South. 118, 14 L. R. A. 253; People v. Troy (N. Y.) 34 Am. Rep. 500; State v. Elder (Neb.) 47 N. W. 710, 10 L. R. A. 796.

In the case of Marbury v. Madison, supra, the court said:

"It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

So it makes no difference that the Attorney General of the state is an executive officer; if the Legislature has imposed upon him the performance of the duty with such precision that the same involves no discretion, the performance thereof is merely a ministerial act, and may be enforced by the writ sought. But what is the nature of the thing to be done, to wit, the examination to be made into the bond issue, the approval thereof, and the certificate of the Attorney General made thereafter? If it is merely ministerial, the writ will lie; if it is not, the writ will not lie, unless his action is arbitrary, or constitutes an abuse of discretion. 18 Ruling Case Law, page 126; Ex parte Bradley, 7 Wall. 364, 19 L. Ed.

214; Wood v. Strother (Cal.) 18 Pac. 766; People v. VanCleve (Ill.) 55 N. E. 698, 47 L. R. A. 795; People v. Healy (Ill.) 82 N. E. 599, 15 L. R. A. (N. S.) 603; Dunham v. Ardery, 43 Okla. 619, 143 Pac. 331.

There may be cases where the proper performance of the official duty imposed by the statute in question upon the Attorney General is purely ministerial, but we are not of the opinion that this is such a case.

In the case of Wood v. Strother (Cal.) 18 Pac. 768-769, the Supreme Court of California said:

"There are innumerable cases in which it has been laid down that mandamus cannot issue to control discretion. The rule —which is undoubtedly correct. when properly understood— has been expressed in various forms. It has been repeatedly said that the writ cannot perform the functions of a writ of error; that it cannot issue to revise judicial action, but can only compel the performance of ministerial functions; and that it will issue to compel a tribunal to act in some way, but not in any particular way. These formulas undoubtedly express a truth; but they express it in an inaccurate and misleading manner. And by reasoning from them, as if literally and in all cases true, courts have sometimes been led into error, and have frequently been forced to call acts 'ministerial' which are plainly not so. An examination of the authorities will demonstrate the inaccuracy of the above phrases. Thus, it is not accurate to say that the writ will not issue to control discretion; for it is well settled that it may issue to correct an abuse of discretion, if the case is otherwise proper."

Plaintiff in error cites the case of State ex rel. Board of Education v. West, 29 Okla. 503, 118 Pac. 146, as the sole expression of the Supreme Court of this state with reference to the kind of duties which the bond commissioner performs in the approval or nonapproval of a bond issue; also In re Bonds of City of Tulsa, 31 Okla. 648, 126 Pac. 555, and In re Hume v. Wyand, 68 Okla. 261, 173 Pac. 813.

In the first above mentioned case, the bond issue sought to be approved was for the purpose of funding an outstanding indebtedness, the validity and legality of which had already been passed upon by the district court, and the judgment of said court had become a finality. The Attorney General was claiming the authority to dispute the validity of certain items of warrant indebtedness, the validity of which had already been adjudicated, and for the funding of which the bond issue was being made. This the court held he had no right to do. Certainly, if the judgment was not appealed from finding the indebtedness to be a valid and binding indebtedness upon the municipality seeking the issue of the bonds, neither the Attorney General nor anyone else could be heard to dispute the binding effect of the final adjudication. In that opinion, the learned Justice, among other things, said:

"The Attorney General may ascertain whether statutory authority exists for the issuance of the bonds, whether the essential facts exist upon which the exercise of such statutory authority may be conditioned, and whether the forms prescribed by the Constitution and statutes have been complied with."

We take it there is nothing in this language of the decision that can be construed or held to mean that a showing of a technical compliance with the forms of procedure of the Constitution and statutes of the state, when the Attorney General knows that the transcript showing a compliance with the technical forms of procedure does not speak the truth, but is based upon a fraud in law, requires him to approve same, and that he has no right, discretion, or judgment in the premises.

The law authorizing bonds of this character is found in sections 7835 to 7843, inclusive, Rev. Laws 1910, as limited by article 10 of section 26, Constitution of the state. If the Attorney General, under the statute after examining into the same, approves the bond issue, and no suit is filed questioning the legality of the same within 30 days, the law makes the issue conclusive, as to the municipality and all persons interested in the same.

In Re Bonds of the City of Tulsa, 31 Okla. 648, 126 Pac. 555, supra, this court in the syllabus said.

"Where it is agreed that certain bonds were issued by a municipality under the provisions of its charter, and not under any statute of the state, the act of March 24, 1910 (Session Laws 1910, chapter 94), makes it the duty of the Attorney General as ex-officio bond commissioner, to examine into not only whether authority so to do exists under its charter, but all other facts necessary to determine their validity, and if valid, to approve the same as provided by said act."

In the case of In re Bonds of the City of Guthrie, 35 Okla. 494, 130 Pac. 265, this court had under consideration a mandamus against the Attorney General to require him to approve a bond issue of said city. The Attorney General withheld his approval, for the reason that he had ascertained outside

of the record that the monies arising from the bond issue were to be used in a manner other than in erecting a public utility within the contemplation of the law under which the issue was made. This court said:

"The bond commissioner had a right to withhold his approval of these bonds, for the reason he has assigned. But let that be as it may, it being addressed to our sound legal discretion whether we will issue or withhold the writ, we will withhold it, if from the record we are of the opinion that the money arising from the sale of these bonds, if approved, will be expended by the city in erecting other than a public utility within the contemplation of said section and article of the Constitution."

In Re Tulsa Bonds and In Re Guthrie Bonds, supra, and in State ex rel. Board of Education v. West, supra, the court in effect held that it was the duty of the Attorney General to inquire into and determine whether the procedure prescribed by the Constitution and statutes had been complied with. The validity of a bond issue is dependent upon a favorable expression of three-fifths of the electors voting thereon at an election at which the electors comprising the district have had an opportunity to vote. Out of 562 electors in the school district in question, only 14 cast their ballots, all in favor of the bond issue, whereas two elections had theretofore been held within a few months in which the bonds lost, and at which elections more than 300 electors cast their ballots.

Irrespective of the above conclusions, which we think amply warranted the trial court in withholding the writ, we come to the discussion of the second proposition involved.

Section 26, art. 10, of the Constitution provides that:

"No school district shall become indebted in an amount exceeding 5 per cent. of the valuation of the taxable property of the school district," etc.

The petition of the relator recites that the bond issue of $66,500 is in excess of 5% of the debt limit of the school district in question. The plaintiff in error insists that this only renders that part of the issue in excess of the debt limit void, but that the remainder is a valid indebtedness of the school district, and should be certified by the Attorney General as such. In support of this contention, the plaintiff in error cites the case of School Town v. Hess (Ind.) 50 N. E. 8, and cases cited therein. We do not think that this or other authorities cited by plaintiff in error establish the principle contended for. These cases go on the principle that where the bond issues were made and the bonds sold, and later the question arose on a proceeding to enjoin the tax levy to pay the same and interest thereon, that under these conditions, the bonds or the pro rata of each bond is valid to the extent of the debt limit prescribed by law, and that to that extent, and that extent only, the tax levy should be made.

We think the correct rule where the bonds have not been sold, as in the case at bar, is stated in the case of State ex rel. Zilstra v. Clausen (Wash.) 119 Pac. 797:

"The relator contends, further, that the bonds are void only for the excess over and above the limitations of 5 per centum of the taxable property affected, and that the auditor ought to be compelled to accept any pay for so much of them as the district could lawfully issue. But we think this contention likewise untenable. It may be that, had the state purchased the bonds and the district sought to avoid them by showing that they were issued in excess of the constitutional limitation, we would on equitable principles allow the contention only for the excess of the issue. But, where the attack is made in advance of the issue, another question is presented. No principles of estoppel, good faith, or good morals enter into it. The question is one of law simply, and since the attempted issue is contrary to law, the state should not be compelled to accept any part of it."

Bonds are issued for specific purposes, which must be plainly set out. In voting for the issuance or not of bonds, the elector must have the right to take into consideration the sufficiency of the amount of money sought to be appropriated for purposes intended. An elector might vote for $66,500 for school purposes, believing that the sum was sufficient to reasonably meet the needs of the community for that purpose, whereas he might not vote for a sum $7,000 less. The entire amount of the bond issue is indivisible, and if the amount voted is in excess of the constitutional limitation, it cannot be held valid or sustained on the theory that the votes in favor of the amount sought would have been cast for any fraction thereof.

The principle which we seek to express is laid down in the case of Jordan v. Andrus (Mont.) 69 Pac. 118, wherein the court used this language:

"Not all the $8,000 indebtedness proposed to be incurred would be without the 3% limit. But the object for which the bonds were voted is single. The debt would be indivisible, and the part within the limit

is not separable from that without." Thornburg v. School District No. 3, 175 Mo. 12, 75 S. W. 81.

We think the facts before the Attorney General on which he refused to approve the issue stripped his refusal of everything in the nature of arbitrary action, and he acted correctly in refusing to approve the same.

For the reasons stated, we think the judgment of the district court in refusing to grant the writ was right, and the judgment is affirmed.

JOHNSON, V. C. J., and KANE, McNEILL, KENNAMER, and NICHOLSON, JJ., concur.