**CITY OF SHAWNEE, Oklahoma, a Municipal Corporation, Plaintiff,**

v.

**Mac Q. WILLIAMSON, Attorney General of the State of Oklahoma, and Ex-Officio Bond Commissioner of the State of Oklahoma, Defendant.**

No. 38562.

Supreme Court of Oklahoma.

April 14, 1959.

**356**

Randall Pitman, City Atty., Miller & Peters, John T. Levergood, Thomas M.

Stevens, Shawnee, George J. Fagin, Oklahoma City, of counsel, for plaintiff.

Mac Q. Williamson, Atty. Gen., Lynnie Clayton Spahn, Asst. Atty. Gen., for defendant.

WELCH, Justice.

This is an original action begun in this court by the plaintiff, City of Shawnee, Oklahoma, a municipal corporation, wherein it seeks a writ of mandamus to compel the defendant, Mac Q. Williamson, Attorney General, and Ex-Officio Bond Commissioner of the State of Oklahoma, to approve certain municipal parking lot bonds issued by the City of Shawnee, when said bonds, together with a duly certified transcript of the proceedings herein, were submitted to the defendant as provided by law, he declined to approve the bonds because there was a question as to the legality of the bond purpose.

■ This action then presents the question whether a public parking lot is a "*public utility*" within the purview and meaning of Section 27, Article 10 of the Constitution of the State of Oklahoma; and whether the bonded indebtedness proposed to be incurred by the City of Shawnee as to the "parking lots," constitutes an unlawful and unauthorized attempt to impose a tax for a purpose not sanctioned by law.

Section 27, Article 10 of the Constitution of Oklahoma reads as follows:

"Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before

or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

The defendant in support of the contention that a parking lot is not a public utility has cited Coleman v. Frame, 26 Okl. 193, 109 P. 928, 31 L.R.A.,N.S., 556; State ex rel. City of Ada v. Williamson, 201 Okl. 547, 207 P.2d 922; State ex rel. City of Shawnee v. Williamson, 186 Okl. 278, 97 P.2d 74, 125 A.L.R. 1389; In re City of Miami, 43 Okl. 205, 141 P. 1174, and In re Bonds of City of Guthrie, 35 Okl. 494, 130 P. 265. We have examined these authorities and find that they all have held that street improvements do not constitute public utilities, since the streets are not exclusively owned and controlled by the municipality. We must agree with these authorities, however, we cannot agree that they are applicable to the question here presented, since the parking lots are to be exclusively owned by the municipality and they are not to be managed or used in the same manner as streets.

■ Defendant next contends that the provisions of Title 11 O.S.1951 §§ 1352 to 1359, inclusive, as amended by the 1953 Legislature, were designed to alleviate the existing problems of automotive congestion in cities, and indicate a legislative intent to relieve the taxpaying voters from any burden incident to the purchase, construction or maintenance of public parking lots. It is argued that by providing a specific method of financing a parking lot project, the Legislature apparently intended to bar and exclude every other method. We cannot agree that the suggested intent is apparent, nor that the Legislature intended to bar or could bar any method authorized by provision of the Constitution. Furthermore, in the case of Application of the

City Council of City of Tahlequah, Okl., 285 P.2d 418, 419, it was held:

"All portions of 11 O.S.Supp.1953, Sec. 449.1 to 449.20 (Title 11, Chapter 8, 1953 Session Laws of Oklahoma) purporting to authorize certain cities and towns to become indebted in excess of the amount fixed in Oklahoma Constitution, Art. X, sec. 26, without complying with all provisions of section 27 thereof are unconstitutional and void."

■ Neither our Constitution nor statutes have defined a public utility, nor has our court heretofore had the question of whether a parking lot owned by a municipality would constitute a public utility. However, this court, in a long line of decisions, has uniformly held that the term "public utilities" as used in Section 27, Article 10 of the State Constitution, is synonymous with the term "public use." State ex rel. Edwards v. Millar, 21 Okl. 448, 96 P. 747; State ex rel. Manhattan Construction Co. v. Barnes, 22 Okl. 191, 97 P. 997, and Barnes v. Hill, 23 Okl. 207, 99 P. 927.

We have held that public parks, sidewalks and paving of the streets through parks, convention halls, sewers, public fire stations, electric light plants, municipal owned airports, public waterworks, cemeteries, public libraries, museums, all are public utilities within the meaning of that term as used in Section 27, Article 10 of the Constitution. Oklahoma City v. State ex rel. Edwards, 28 Okl. 780, 115 P. 1108; City of Ardmore v. State ex rel. Best, 24 Okl. 862, 104 P. 913; Williams v. City of Norman, 85 Okl. 230, 205 P. 144; Chastain v. Oklahoma City, 208 Okl. 604, 258 P.2d 635; Dunagan v. Town of Red Rock, 58 Okl. 218, 158 P. 1170; Denton v. City of Sapulpa, 78 Okl. 178, 189 P. 532, 9 A. L.R. 1031; Bekins v. City of Tulsa, Okl., 299 P.2d 792; City of Tulsa v. Williamson, Okl., 276 P.2d 209; Town of Nichols Hills v. Williamson, Okl., 323 P.2d 733, and Price v. Storms, 191 Okl. 410, 130 P.2d 523.

The ever increasing complications of modern civilization from time to time have compelled a new examination and application of the constitutional provision as to "public utilities." This is not to change the meaning of the Constitution to meet changing times as that would be an amending of the Constitution by judicial decree. We merely re-examine the Constitution as written, and make judicial application thereof to the new situation presented. In order to cover new applications the term "public utility" has become somewhat synonymous with the term "public good or public use." The courts in other jurisdictions have consistently defined "public use" to mean public utility, advantage, or what is productive of public benefit.

The evident object and purpose of Section 27, supra, is primarily to empower the incorporated cities and towns of this state by a majority of the qualified taxpaying voters voting at an election held for such purpose to become indebted in a larger amount than that specified in Section 26, for the purpose of purchasing or constructing public utilities or for repairing the same, to be owned exclusively by such municipalities, and it is the duty of the court to so construe the provisions as to carry out its purpose. The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.

Where a constitutional provision is complete in itself it needs no further legislation to put it into force. And where it asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself. Davis v. Burke, 179 U.S. 399, 21 S.Ct. 210, 45 L. Ed. 249; State ex rel. Edwards v. Millar, supra.

We are irresistibly led to the conclusion that Section 27, Article 10, supra, is a grant of power to the people of the municipalities of the state, and not a limitation.

Section 1 of Art. 2 of our Constitution provides that:

"All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare."

This general underlying idea that the people themselves have the power by direct vote to control their own affairs is very persuasive that it was the intention of the Constitution to give to municipal corporations directly the right to become indebted by vote of the taxpayers for the construction of public utilities. Therefore since it has been held that public utility and public use are synonymous, and that usually or generally whatever is beneficially employed for the community is of public use, we are of the opinion that the taxpaying voters of a municipality have some qualification to determine whether a parking lot would be a public use and benefit, and when they have so determined by their vote, the court should give a fair and just construction and decision as to what constitutes a public utility under Section 27, Article 10, supra.

It is obvious from the authorities hereinabove cited and referred to, that from time to time as our population has increased and modern civilization has progressed, both a demand and the necessity for various public services have increased. The increased use of motor vehicles has created a serious parking problem in all municipalities to the extent that a municipally owned parking lot is not only a convenience such as public libraries, museums, public parks, etc., which have heretofore been held to be public utilities, but is a necessary service to the public for the control of congested traffic on the streets, and for the protection of pedestrians and property owners within the municipality.

For the reasons above stated, we are of the opinion, and so hold, that parking lots exclusively owned and operated by municipalities are public utilities within the meaning of that term as used in Section 27, Article 10 of our Constitution.

Writ granted.