[No. 2327.]

## CUTSHAW v. THE CITY OF DENVER.

1. **Cities and Towns—Ordinances—Charter—City Officers—Inspection of Buildings.**

A city ordinance creating a department for the inspection of buildings and placing it on the same footing with other executive departments of the city was abrogated by a subsequent city charter which established and defined the city's executive departments, and committed to the department of public health and safety the inspection of buildings, and the department of inspection of buildings as created by the ordinance ceased to exist and the official position at the head of the department, called the inspector of buildings, was abolished.

2. **Same.**

Where a city ordinance creating a department for the inspection of buildings, with an official at its head called the inspector of buildings, was abrogated by a subsequent city charter which established and defined the executive departments of the city, and committed to the department of public health and safety the inspection of buildings as a bureau of inspection, the department of inspection as created by the ordinance did not survive as the bureau of inspection as established by the charter, and the building inspector at the head of the department of inspection did not become the commissioner of inspection at the head of the bureau of inspection.

3. **Same.**

Where a city charter created a bureau of inspection, one of the various duties of which was the inspection of buildings, and the commissioner at the head of the bureau was authorized to appoint his own assistants, another charter provision authorizing the city council to provide for the inspection and regulation of buildings, did not authorize the council to provide for the appointment of some other person than the commissioner and his assistants to perform the duty of inspection of buildings.

**4. Same.**

Where a city charter vests the executive power of a city in a number of officers to be elected by the people, and certain named commissioners and superintendents to be appointed by the mayor, and such other boards and officers to be appointed by the mayor as should be provided by ordinance not inconsistent with the charter provisions, the other officers authorized to be provided for by ordinance must be officers belonging to the same general class or rank as those enumerated in the charter, and would not authorize the city council to provide for a mere assistant to an official, where the charter. authorized the official to appoint his own assistants.

**5. Same.**

Where a city charter made the mayor head of the department of public health and safety, to which department was committed the bureau of inspection, headed by a commissioner of inspection, a general charter provision authorizing the heads of departments to appoint all subordinate officers and employees of their respective departments would not authorize the mayor to appoint an assistant to the commissioner of inspection where there was a special charter provision authorizing such commissioner with the approval of the mayor to appoint his own assistants.

**6. Same.**

A provision in a city charter authorizing the city council to provide for the employment of such clerks and other persons in any of the departments of the city government as the exigencies of the public service may demand, must be construed to apply only to cases where no provision is made by the charter, and would not authorize the council to provide for an assistant to the commissioner of inspection where the charter authorized such commissioner to appoint his own assistants.

*Appeal from the District Court of Arapahoe County.*

On the 23d day of November, 1889, the following ordinance was adopted by the city council of the city of Denver:

. "Be it enacted by the City Council of the City of Denver.

## "ARTICLE 1.

"Section 1. There shall be in the city of Denver a department to be called the 'Department for the In-

spection of Buildings,' which shall be supplied with suitable office rooms, and the necessary supplies and printing, for the proper transaction of business, in the same manner as now provided for other executive departments of the city.

"Sec. 2. The chief officer of said department shall be called the Inspector of Buildings, and shall be appointed by the mayor and confirmed by a majority of the members of the board of supervisors. He shall hold his office for the term of two years, and until his successor shall be appointed and qualified, by and with the consent of a majority of the board of supervisors, but may be removed by the mayor for malfeasance, incapacity or neglect of duty. He shall receive a salary of $2,400 per annum, payable in equal monthly installments, out of the city treasury, and shall receive no other fees or emoluments by virtue of said office."

On the 15th day of April, 1893, M. D. Van Horn, then mayor of the city, appointed the appellant to the office of building inspector, and issued and delivered to him the following certificate of appointment:

"To All to Whom These Presents Shall Come, Greeting:

"That, having confidence in the ability, sobriety and integrity of Leonard Cutshaw, I, Marion D. Van Horn, mayor of Denver, do by these presents constitute and appoint him, the said Leonard Cutshaw, of the city of Denver, to the office of building inspector, to have and to hold said office at the pleasure of the appointing power, with the pay as provided by ordinance, for duty in city.

"In witness whereof, I, Marion D. Van Horn, mayor of the city of Denver, have hereunto set my hand.

"Done at the city of Denver this 15th day of April, A. D. 1893.

"M. D. VAN HORN,

Mayor."

This appointment was never submitted to the board of supervisors for confirmation. On the 3d day of April, 1893, twelve days before the date of appointment of the appellant, an act of the general assembly took effect, entitled "An act to revise and amend the charter of the city of Denver."—Session Laws 1893, pp. 131-235.

Section 1 of article IX of that act, provides that all ordinances of the city in force at the time of the taking effect of the act, and not inconsistent with it, shall remain in full force and effect as the ordinances of the city of Denver, until altered or repealed. Section 1 of article III, provides as follows:

"The executive power of the city shall be vested in a mayor, a city clerk, a city treasurer, a city auditor, a city attorney, a city engineer, a street commissioner and a water commissioner, who shall be elected by the qualified electors of the city; in a board of public works, consisting of a president and two other members who shall be appointed by the governor of the state of Colorado; in a fire and police board, consisting of three members who shall be appointed by the governor of the state of Colorado; also in a health commissioner, a commissioner of inspection, a park commissioner, a superintendent of supplies, and such other boards and officers as may be provided for by ordinance, not inconsistent with the provisions of this act, to be appointed by the mayor in writing filed with the city clerk, with power of suspension or removal by the mayor at any time, but not for political reasons."

The following are sections 2, 3, 44 and 79 of article III:

"Sec. 2.   There shall be the following executive departments:   (1) a department of finance; (2) a department of law; (3) a department of public works; (4) a department of public health and safety; (5) a department of parks; (6) a department of supplies.

"Sec. 3.   The department of finance shall include a bureau of audit and account, of which the city auditor shall be the head, and a bureau of the treasury, of which the city treasurer shall be the head. The city attorney shall be the head of the department of law; the board of public works of the department of public works; the mayor of the department of public health and safety; the park commission of the department of parks; and the superintendent of supplies of the department of supplies. All subordinate officers and employees, except of said boards and commission, shall be appointed in writing by the heads of their respective departments, the appointments to be filed with the city clerk; and all subordinate officers and employees of each board or commission shall be appointed by resolution of such board or commission."

"Sec. 44.   The department of public health and safety shall include the following officers, who shall respectively be the heads and have active charge of the affairs of the following bureaus, to wit: A fire commissioner, of the bureau of fire. A police commissioner, of the bureau of police. An excise commissioner, of the bureau of excise. A health commissioner, of the bureau of health. A commissioner of inspection, of the bureau of inspection. The fire commissioner, police commissioner and excise commissioner shall constitute the fire and police board of the city of Denver, and all the operations of the bureaus of fire, police and excise, shall be subject to the general control of said board."

"Sec. 79.   The commissioner of inspection may

employ such assistants as may be authorized by the mayor, and it shall be his duty to enforce the laws and ordinances of the city applicable to the work of said bureau."

Relative to the commissioner of inspection, section 47 of the same article provides as follows:

"The commissioner of inspection shall have general charge of the inspection of buildings, and parts of buildings, drains, drain laying, elevators, boilers, gas and electric fittings, gas and electric lights, and all other apparatus and machinery requiring inspection and regulation, as the same may be authorized by ordinance; the inspection and control of electric wires, electric wiring, and all other electrical apparatus and machinery; the location, maintenance, marking, insulation and removal of wires, and the use of all electric wiring, electric wires and conductors for light, heat, power, telegraph, telephone or other commercial purposes, whether public or private; the inspection of weights and measures; the sources of dense smoke; the erection and care of workhouses, charities and corrections; the care of markets and public baths."

By the terms of subdivision 4 of section 20 of article II, power is conferred upon the city council "to provide for the inspection and regulation, among other things, of buildings and parts of buildings"; and section 23 of the same article, authorizes it to provide for the employment of such clerks and other persons in any of the departments of the city government as the exigencies of the public service may require.

The services of the appellant commenced at the time of his appointment, and he acted as inspector of buildings for five years. He received during that time only $150 per month, protesting frequently that, by virtue of the ordinance, he was entitled to $200.

Each of the annual appropriation bills passed during the five years, set apart $1,800 for the salary of ''The Assistant Commissioner of Inspection in charge of buildings.'' The total amount received by the appellant for his five years of service was $9,000. At $200 per month the amount would have been $12,000; and he brought this suit to recover from the city $3,000, the difference between the two sums. His complaint set forth the ordinance of November 23, 1889; averred his appointment on the 15th day of April, 1893, in pursuance of its provisions; the performance by him of his duties as inspector of buildings for five years; his right to a salary of $200 per month, amounting for his term of service to $12,000; and the payment to him of only $150 per month, or $9,000 in all. The complaint was demurred to on the ground of insufficiency; and, the demurrer being overruled, an answer was made, to the effect that at the time of the plaintiff's appointment the ordinance was no longer in force, having been repealed by the amended charter of April 3, 1893; and that the duties he discharged were those of assistant to the commissioner of inspection, the only compensation for the performance of which was that named in the appropriation ordinances. By the judgment of the court, the plaintiff's claim was disallowed, and he has brought the case here by appeal.

Mr. F. A. WILLIAMS, for appellant.

Mr. J. M. ELLIS, Mr. N. B. BACHTELL, Mr. HENRY A. LINDSLEY, and Mr. CHARLES R. BROCK, for appellee.

THOMSON, P. J.

It is conceded that the ordinance in question was consistent with the provisions of the charter in force at the time of its adoption; and, by the terms of sec-

tion 1 of article IX, of the act of April 3, 1893, if it was not inconsistent with the provisons of that act, it remained a valid ordinance.

For the plaintiff, it is contended that the ordinance, at least in so far as the validity of the plaintiff's appointment and the fixing of his salary are concerned, was not overthrown by the amended charter; while in behalf of the city it is argued. that the effect of that law was to abrogate it in all its parts. We shall therefore compare each of the provisions of the ordinance with the corresponding provision of the amended charter, to see how far the two may stand together.

The ordinance created a new executive department, called "The Department for the Inspection of Buildings," and placed it on the same footing with the other executive departments of the city government. But the charter of 1893, itself, established and defined the city's executive departments. It fixed the number, and assigned to each its place in the city government. The inspection of buildings was committed to the department of public health and safety, and placed specially in charge of one of its bureaus, named the bureau of inspection, the head of which was an officer called the commissioner of inspection, upon whom was cast a multiplicity of duties aside from the inspection of buildings. When the department of public health and safety was established, and divided into bureaus to one of which was assigned the inspection of buildings, the department created by the ordinance ceased to exist. It was displaced by a department of much more extensive scope, but which included all the powers and duties pertaining to it. The ordinance, therefore, in so far as it created a department, was abrogated by the charter.

The ordinance provided for a chief officer, or

head, of the department it created, to be appointed by the mayor and confirmed by the board of supervisors, and to be called the "Inspector of Buildings," but when the department fell, the office of chief or head of the department fell with it. The charter left no room for any such office or any such officer. The head of the department which embraced the bureau of inspection, was the mayor himself; and the head of the bureau of inspection was the commissioner of inspection.

It cannot be said that the department of inspection created by the ordinance, survived in the charter as the bureau of inspection; or that, in harmony with the charter, the head of the department of inspection might become the head of the bureau of inspection; because the department of inspection was created with reference to but one subject, and the authority of its chief officer extended to but one subject; whereas the functions of the bureau of inspection included a number and variety of subjects in addition to the inspection of buildings, which were placed under the control of its head, and in respect to which, the chief of the department of inspection could, in virtue of his appointment under the ordinance, exercise no control. But it is said that so far as the provision for the appointment of an inspector of buildings is concerned, the ordinance may still be harmonized with the charter, because the charter confers upon the city council the power to provide for the inspection and regulation of buildings, and the inspector appointed under the ordinance might, in virtue of his appointment, and the nature of the duties committed to him, consistently with the provisions of the charter, continue the exercise of his functions as assistant to the commissioner of inspection. Let us examine this proposition. Subdivision 4 of section 20 of article II does, in terms, empower

the city council to provide for the inspection and regulation of buildings; but in view of the fact that the charter places the inspection of buildings under the exclusive control of the commissioner of inspection, it was certainly not the intention of the legislature to bring the charter into conflict with itself by authorizing the council to provide for the appointment of some other officer to exercise the same control. That provision would be satisfied by an ordinance prescribing the manner of inspection, the circumstances under which it should be made, and the duties of the inspector and the owner in relation to it. But we find in the charter another, and insurmountable, objection to the proposition. Section 79 of article III provides for the employment by the commissioner of inspection of his own assistants, subject only to the condition that they be authorized by the mayor. Counsel, however, say that the authority of the mayor to make the appointment in question, is found elsewhere in the charter, so that an inspector of buildings was not intended to be included among the assistants whom the commissioner might employ. Section 1 of article III vests the executive power of the city in a number of officers to be elected by the people; and in a health commissioner, a commissioner of inspection, a park commissioner, a superintendent of supplies, and such other boards and officers as may be provided for by ordinance, not inconsistent with the provisions of the act, to be appointed by the mayor. It is upon the last clause that counsel relies. But by the rule *ejusdem generis*, where there is an enumeration of particular things followed by general words, the latter shall be construed as having reference only to things of the same kind or class with those specifically mentioned.—*St. Louis v. Laughlin*, 49 Mo. 559; *Morse v. Morrison*,

16 Colo. App. 449; Bouvier's Law Dictionary, Tit. *Ejusdem Generis.*

The other boards and officers to be provided for by ordinance, whose appointment was given to the mayor, must therefore be boards or officers belonging to the same general class, rank or grade, with those enumerated. The multifarious duties of the commissioner of inspection would, doubtless, necessitate the employment of a number of assistants; but a mere assistant of an officer to whom certain of the details of the office are intrusted, if he may properly be called an officer at all, is not an officer of the same class, grade or rank with the officer under whom he serves; and, hence, the words "other officers," would not include him.

Section 3 of article III makes the city attorney the head of the department of law; the board of public works, of the department of public works; the mayor, of the department of public health and safety; the park commission, of the department of parks; and a superintendent of supplies, of the department of supplies; and then provides that all subordinate officers and employees, except of the board and commission, shall be appointed in writing by the heads of their respective departments; and that subordinate officers and employees of each board or commission, shall be appointed by a resolution of the board or commission. A construction of these provisions which would cast on the heads of the departments plenary power as to the appointment of subordinate officers and employees of every degree in all the departments, would furnish an argument that, as the mayor is the head of the department of public health and safety, the appointment by him of the plaintiff as inspector of buildings, was proper, and that, thus far at least, the ordinance was in harmony with the charter; and this is the view which is urged

upon us in behalf of the plaintiff. But such a construction would array different provisions of the charter against each other; because, as to the department of public health and safety, in several instances, the power of appointment of subordinates is specially lodged, not in the mayor, but in the officers and boards constituting it. Thus, by the terms of sections 45, 60, 64 and 65, of article III, the fire and police board, composed of the fire commissioner, police commissioner, and excise commissioner, is empowered to appoint a secretary of the board, a chief, assistant chiefs, and wardens of the fire department, chiefs of police and detectives, and such other officers and assistants as it may deem proper. The general authority of appointment conferred upon the mayor, as head of this department, must therefore be held inapplicable to cases which come within special provisions lodging the power of appointment elsewhere; and one of those provisions is that authorizing the commissioner of inspection, with the approval of the mayor, to appoint his own assistants.

Neither is the ordinance aided by section 23 of article II, authorizing the city council to provide for the employment of such clerks and other persons in any of the departments of the city government as the exigencies of the public service may demand. That section can be applicable only to cases concerning which there is an absence of provision in the charter. But as we have seen, the charter itself provides the manner in which the assistants of the commissioner of inspection shall be employed.

The result of our comparison of the ordinance with the charter is that the former contained no provision which is not inconsistent with some provision of the latter, and that upon the taking effect of the charter, the whole ordinance became void.

But the appointment in question does not seem

to have been made upon the authority of the ordinance. It was not the appointment for which the ordinance provided. The ordinance fixed the term of office of the appointee at two years; but the plaintiff was appointed to hold his office during the pleasure of the appointing power. By the terms of the ordinance the appointment could not take effect until it was confirmed by the board of supervisors; but this appointment was not submitted to the board of supervisors. In making the appointment the mayor probably supposed he was acting by authority of the charter, and independently of the ordinance; but under the charter such an appointment by him was a nullity. The plaintiff, however, acted for five years as assistant to the commissioner of inspection; and, having accepted his services, how far the city might be estopped to question the validity or regularity of his employment under the charter, it is unnecessary to inquire, because he was paid for his services. He claims a balance over what he received, on the theory that he was entitled to the salary provided by the ordinance; but that salary was inseparably attached to the office created by the ordinance; and when the office was abolished by the charter, there was no officer entitled to receive it. The salary, being payable only to the incumbent of the office, became extinct with the office. Except in the annual appropriation bills, no salary was provided for the plaintiff as assistant to the commissioner of inspection; and, beyond the sums appropriated for his benefit, he had no claim to compensation. But those sums were paid to him in full; and, in so far as he ever had a legal demand against the city, that demand was satisfied.

The judgment will be affirmed.

*Affirmed.*