## STORM v. PARMAN.

No. 5621.   Opinion Filed August 11, 1914.

Rehearing Denied September 29, 1914.

(143 Pac. 38.)

ELECTIONS—Contest—Irregularities—Burden of Proof. Under the provisions of the Constitution of the state of Oklahoma, article 3, section 4a (Williams'), and section 5, chapter 106, Sess. Laws 1911, the duty of applying the educational test necessary to prove the qualification of certain persons otherwise entitled to vote, and thereupon determining the right of such persons to vote at any election, devolves upon the precinct election officers; and in the absence of proper allegations, and proof of fraud or failure or neglect on the part of such officers in the performance of said duties, their action in permitting, or refusing to allow, persons to vote at an election will not be reviewed by the courts, the presumption being that said duties were fairly and honestly performed in accordance with the provisions of the law.

(Syllabus by the Court.)

Storm v. Parman.

*Error from Superior Court, Oklahoma County;*
*Edward D. Oldfield, Judge.*

Election contest by Bob Parman against W. W. Storm. Judgment for plaintiff, and defendant brings error. Affirmed.

*Sam Hooker* and *Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*G. A. Paul* and *Embry & Hastings,* for defendant in error.

BLEAKMORE, J.  This case presents error from the superior court of Oklahoma county, and is an election contest brought in the court below by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, to try the right to the office of county clerk of said county. For convenience, the parties are herein referred to as they appeared in the trial court. The plaintiff was the Republican candidate and defendant the Democratic candidate for said office at the general election held on November 5, 1912. The trial court rendered judgment finding that plaintiff was entitled to the office. The county election board, after a canvass of the ballots cast for said office, declared the defendant duly elected and issued to him a certificate of election. Plaintiff contested, claiming that he had received a plurality of all the votes cast and was rightfully elected and entitled to said office. The defendant claimed that there were a large number of ballots counted for the plaintiff and against him, cast by persons who were disqualified to vote under the provisions of what is commonly known as the "grandfather clause"; that is, that said persons were not able to read or write any section of the Constitution of the state of Oklahoma and were lineal descendants of persons who were not entitled to vote under the forms of government under which they lived on and prior to January 1, 1866.

The only ground upon which plaintiff in error seeks to reverse the judgment rendered in this case is that the trial court erred in sustaining an objection to the introduction of the stub books of ballots returned from certain election precincts, to show the names of the voters who cast their ballots at said election. Upon trial of

the case, the ballots were recounted, and the recount disclosed the fact, and the court found, that the plaintiff had received a plurality of 56 votes. After such recount of the ballots was had, the defendant offered in evidence the stub books of certain election precincts, and the following colloquy between the court and attorneys occurred:

"By Mr. Hooker: Now comes the defendant, and offers in evidence Exhibits 40 to 48, inclusive, which are the stub books containing the names of the voters who cast their vote for the various county officers at the November election, 1912, from precincts of Springer township, Edmond township, Lincoln township, Pottawatomie township, Luther township, Greeley township, Elk township, Crutcho township, and Choctaw township.

"By Mr. Paul: To which the plaintiff objects until it is shown, first, the materiality of these stub books, and they are not in issue in this case.

"By the Court: In what way are they material, Mr. Hooker?

"By Mr. Hooker: Just a minute. And now comes the defendant, and offers in evidence the stub book from Luther City, showing the names of the voters in that precinct who voted for the state candidates at the November election, 1912; the county ballot book, with the stub book thereon, not being in the possession of the election board.

"By Mr. Paul: To which we object for the reason the same is incompetent, irrelevant, and immaterial, it being a stub book of the state election, and not of the county election, and also, until it is shown that it is material to some issue in this case, we object.

"By Mr. Hooker: The purpose is simply this: It is the contention of the defendant in this case that there were 200 or 300 illegal voters who cast their votes for the plaintiff in this county at the November election, 1912. The basis of their disqualification consists in the fact that these voters were unable to comply with the grandfather clause of the state of Oklahoma describing the necessary qualification for a party to be able to vote. Now, in order to prove that statement of fact, it is necessary for us to prove, first, who voted at the November election in these respective precincts. The best evidence of that fact is the stub book, where the name of the voter is entered by the election officers at the time that a ballot is handed him by the election officers of that precinct. Then, of course, after

it has been shown that that particular party voted at that precinct, then comes the proposition of how he voted, which, of course, will have to be introduced later, and the proposition of that is laying the foundation in order to show that these illegal voters voted at their respective precincts in the November election, 1912, in order that we may subsequently show that these voters voted for the plaintiff in this case, and that they were disqualified under the law of the state of Oklahoma by reason of their incapacity to comply with what is known under the law as the 'grandfather clause' of our Constitution.

"By Mr. Paul: If these records are introduced for the purpose indicated, they are not admissible; but if they are introduced as a part of the records of the election held in the various townships indicated, then they are admissible. Under the statements made by counsel, I still insist that they are inadmissible, and not material to any issue raised in this case; but if he desires to introduce them as a part of the records of the election from that particular township, then we have no objection.

"By the Court: Then, Mr. Hooker, they are offered in evidence in this case solely for the purpose of showing or laying a foundation upon which to show the incapacity, under the grandfather clause, of certain voters to vote?

"By Mr. Hooker: I want to be fair with the court. I don't care anything about them going in the record. We want them, so we can tell who voted at that precinct, in order to save expense by proving by half a dozen people who was allowed to vote. That is a question that would necessarily entail a lot of time and expense, and quite an expense to have to go and take the depositions of a large number of people, to prove that certain parties voted in that precinct at that particular time. We think that this is the best evidence of whether that party voted in the November election, and we want it in for that purpose only.

"By the Court: For the purpose of showing who voted, and then to show that these voters were not legal voters?

"By Mr. Hooker: Just to lay the foundation.

"By the Court: The objection is sustained."

While, undoubtedly, in many cases stub books of the ballots cast at an election might be competent, and perhaps the best evidence, under proper allegations in the pleadings, yet in the case at bar it will be noted that defendant offered in evidence all of

the stub books of certain precincts, and not the stubs of any par-
ticular ballots cast by persons alleged to have been disqualified
to vote at such election. It is not claimed that all of the votes cast
in said precincts were illegal by reason of the disqualification of
the voters under the "grandfather clause," and certainly the stubs
of those ballots lawfully cast could not have been competent or
material to prove any issue then involved in the case. They were
offered for the purpose of proving the names of all the voters
who participated in the election in those townships and precincts,
with a view of later introducing testimony to show that certain
of said voters were disqualified under the "grandfather clause,"
and that a sufficient number of such disqualified voters had cast
their ballots for the plaintiff to reduce the number of legal bal-
lots cast for him to a number less than those received by the de-
fendant. No evidence of the fact that a single voter in either
of said precincts was in fact disqualified was offered. In the
absence of evidence to the contrary, the legal presumption is that
only those persons qualified to vote were given ballots when they
applied for the same, and that all the provisions of the Constitu-
tion and statutes of the state relative to elections were enforced
by the precinct election officers. There is nothing in the record .
to show that any voter in either of said precincts was challenged,
or that the precinct election officers, after a test of the qualifica-
tions of any voter shown to be disqualified, permitted him to vote.
The defendant merely stated that it was his purpose to produce
such evidence at a later time. Had the court permitted the in-
troduction of said stub books in evidence and considered the
same, its judgment in this case must have been the same, for
the reason that said stub books, themselves, are not evidence of
the disqualification of any particular voter, and do not prove, or
tend to prove, for whom any voter cast his ballot at said elec-
tion, and at most could only have shown the names of the per-
sons who received ballots detached from such stubs. If defend-
ant was in possession of evidence proving or tending to prove
that the election officers in said precincts had permitted persons
to vote who were disqualified under any provision of the law,

it was his duty to present such testimony to the court, and not content himself with a mere statement that such evidence could be produced.

There is no allegation in the pleadings that the precinct election officers knowingly or fraudulently permitted persons to vote at said election who were not qualified so to do under the law, nor that such election officers either failed or refused to apply to any voter at said election the educational tests contemplated by the law to establish his right to vote. Under the provisions of the Constitution of the state of Oklahoma, article 3, section 4a (Williams'), and section 5, chapter 106, Sess. Laws 1911, the duty of applying the educational test necessary to prove the qualification of certain persons otherwise entitled to vote, and thereupon determining the right of such persons to vote at any election, devolves upon the precinct election officers; and in the absence of proper allegations, and proof of fraud or failure or neglect on the part of such officers in the performance of said duties, their action in permitting, or refusing to allow, persons to vote at an election will not be reviewed by the courts, the presumption being that said duties were fairly and honestly performed in accordance with the provisions of the law.

In the light of the entire record in this case, we are unable to say that there was such error in the proceedings in the court below as to prejudice the rights of the plaintiff in error; and the judgment of the trial court is accordingly affirmed.

KANE, C. J., and RIDDLE, J., concur. TURNER and LOOFBOURROW, JJ., absent and not participating.