## REID et al. v. CITY of MUSKOGEE et al.

No. 20143. Opinion Filed June 4, 1929.

Archibald Bonds and Guy F. Nelson, for plaintiffs in error.

C. A. Ambrister and Bower Broaddus, for defendants in error.

HUNT, J. This is an appeal from the district court of Muskogee county. The plaintiffs in error were plaintiffs below, and the defendants in error were defendants below. For convenience the parties will be referred to herein as they appeared below.

The plaintiffs, E. C. Reid, John R. Gilkerson, and Archibald Bonds, began this action by filing, on the 6th day of July, 1928, their petition against the defendant, city of Muskogee, and the members of its council seeking to restrain them from delivering those certain bonds known as "City Hall or Municipal Building Bonds," voted by the citizens of Muskogee at an election held in said city on January 24, 1928, to determine whether the city of Muskogee, Okla., should incur an indebtedness by issuing its negotiable coupon bonds to provide funds for the purpose of purchasing or otherwise acquiring a lot or tract of land in said city and erecting thereupon a city hall or municipal building to be owned exclusively by said city, and levying and collecting an annual tax, in addition to all other taxes upon all the taxable property in said city, sufficient to pay the interest on said bonds and to constitute a sinking fund for the payment of the principal thereof when due.

This case was tried to the court, and at the conclusion of plaintiffs' evidence a demurrer was interposed thereto, which was by the court sustained and plaintiffs' petition dismissed and judgment rendered for the defendants. It is from this judgment this appeal is prosecuted. The petition in error filed herein contains only two assignments of error, as follows:

(1) The court erred in sustaining the demurrer of defendants to the evidence of plaintiffs, and rendering judgment for defendants and against plaintiffs, to which plaintiffs excepted.

(2) The court erred in overruling plaintiffs' motion for a new trial, to which plaintiffs excepted.

In the brief of plaintiffs filed herein said assignments are consolidated and presented together. The record discloses that an election was held in the city of Muskogee on January 24, 1928, at which time the bonds here in question were voted, a total of 3,382 votes being cast, of which 2,095 were for the bonds and 1,287 were against the bonds. It further appears that the bonds were duly approved by the Attorney General of Oklahoma, as ex officio Bond Commissioner, on June 7, 1928, and thereafter the bonds were duly advertised and sold by the city of Muskogee., and, as hereinbefore stated, plaintiffs seek in this proceeding to enjoin the delivery of said bonds to the purchasers thereof. No temporary restraining order was issued or sought by the plaintiffs, but it appears that the defendants have not delivered the bonds nor made any effort to do so since the institution of this suit.

The sole question presented for our consideration and determination in this appeal is whether or not the trial court erred in sustaining the demurrer to plaintiffs' evidence. The principal contention of plaintiffs, as disclosed by their petition and the evidence offered in support thereof, seems to be that certain improper and unlawful inducements were offered to the voters in order to enlist their support for the bonds, and that same amounted to bribery, and therefore vitiated the election.

In support of this contention plaintiffs cite and quote at length from the city of Tecumseh v. City of Shawnee, 33 Okla. 494, 126 Pac. 440, Incorporated Town of Bristow v. City of Sapulpa, 33 Okla. 484, 126 Pac. 446, and Incorporated Town of Ryan v. Town of Waurika, 29 Okla. 655, 119 Pac. 220. We have examined each of these cases, and find that they were contests involving location of county seats, and it was held that the offering of certain inducements to

the voters constituted bribery by reason of the provisions of section 7, article 17, of the Contitution. It is readily apparent that these cases are not in point here, because the holding therein as to what constituted bribery of voters was based squarely upon the above-mentioned provision of the Constitution, which applies exclusively in county seat elections, and therefore has no application here.

In the Bristow Sapulpa Case, supra, it was shown that liquor was freely used, and other unlawful practices were resorted to in two certain precincts sufficient to corrupt the ballot in these precincts, and that the vote in those two precincts was sufficient to change the result of the election, so a new election was ordered. In the Tecumseh-Shawnee Case it was shown an offer was made by the mayor and city council of one of the contestants to furnish at a nominal rental a city hall to be used as a courthouse, and also a large fund had been raised by this city for the purpose of influencing voters. Sections 6 and 7 of article 17 of the Constitution are as follows:

"Sec. 6. The towns herein named as county seats shall be and remain the county seats of their respective counties until changed by vote of the qualified electors of such county, in the following manner. * * *

"Sec. 7. Any person or corporation offering money or other thing of value, either directly or indirectly, for the purpose of influencing any voter for or against any competing town in such election, shall be deemed guilty of bribery."

County seat elections are controlled by these special provisions of the Constitution relating thereto, and same are in no sense applicable in elections such as involved herein.

Briefly summarized, the evidence shows the mayor's proclamation calling the election was regularly issued on the 12th day of January, 1928, and the election was held thereunder on January 24, 1928; that during the time intervening a campaign was waged both for and against the bonds. That numerous organizations in the city indorsed the bonds; that there was considerable newspaper publicity both advocating and opposing the bonds. It further appears that certain individuals appeared before certain clubs and organizations in the city to speak, and it seems that at most of these meetings, at least, both sides of the question were fully and ably presented. The evidence failed to show wherein the city officials took any active part in the campaign at any time

or that the city was a party to any of the alleged promises made to the voters as an inducement to support the bonds, or was in any way responsible for the activities of the so-called "Committee for the Bonds." The plaintiffs attempted to establish the fact that the possible removal of the Veterans Bureau from Oklahoma City to Muskogee was offered as one of the major considerations in voting for the bonds. That the removal of this bureau to Muskogee would bring 150 families and a large pay roll, and by voting these bonds and being able to offer the government adequate quarters, rent free, would make it possible to secure this enterprise for the city of Muskogee.

Defendants contend that the evidence of plaintiffs affirmatively shows that there was no bribery in the election and that the statements and advertisements made by the citizens committee for the bonds were proper and did not amount to bribery, either in leading the Chamber of Commerce to believe quarters would be furnished in the city hall, rent free, or in inducing the taxpayers to vote for the bonds so that the Veterans Bureau might possibly be moved to Muskogee if adequate quarters would be furnished the bureau free in the proposed new building.

Defendants cite Perkins County of Nebraska v. Graff, 114 Fed. 441, which seems to be a leading case on this subject, and we quote from the opinion of Judge Sanborn therein, and think the rule is correctly stated as follows:

"When electors are called upon to choose between great moral or political principles or between candidate for official positions, the use of any pecuniary inducement to sway the choice of the voter is illegal and corrupt. But there was no choice of principles or of persons involved in the question whether or not this county should aid the construction of this canal. When the question to be determined is whether or not public aid shall be given to the construction of an internal improvement within a county, city, or other political division of a state, the primary question is whether or not the improvement will be of pecuniary benefit to the political subdivision and its people. The very purpose of the submission of the question to the voters is to enable them to balance in their own minds the pecuniary advantages and disadvantages which their county, city, or precinct will derive from the improvement, and the taxation which must follow the aid to its construction proposed; and it is both lawful and proper that they should consider and be influenced by the gain or loss which, in their judgment,

its construction will entail upon themselves and their county or city."

To paraphrase the above citation and applying same to the instant case, there was no choice of principles or persons involved in the question whether or not the city of Muskogee should acquire a lot and construct thereon a city hall or municipal building. When the question to be determined is whether or not the municipality is to become indebted for certain public improvements within the city, duly authorized by law, the primary question is whether or not the improvement will be of benefit to the municipality and its people. The very purpose of the submission of the question to the voters is to enable them to balance in their own minds the advantages and disadvantages which their city will derive from the improvement and the taxation which must follow, and it is both lawful and proper that they should consider and be influenced by the benefits or lack of benefits which, in their judgment, would accrue to the city by reason of the proposed improvement. One of the grounds upon which the validity of the bonds in the case above cited was challenged was that the voters were bribed to vote for the issue because the proposition of the Irrigation Company contained an offer "to give employment in the construction of said canal to bona fide residents of Perkins county, Neb." In discussing this proposition the court said:

"The inhabitants of villages were probably induced to vote for it because it would furnish water power and water to their communities, and thus enable them to employ, and be employed in the use of the machinery it would operate. These were proper inducements to influence the action of the voters of that county upon the question of the issue of these bonds. They were the very inducements which it was the intent and purpose of the Legislature that they should consider and be governed by in their action upon the proposition to aid the project submitted. The consideration that the building of this work would give to the residents of the county employment and wages during its construction was of the same character as the consideration that its waters, when it was constructed, would irrigate farms, drive factories, and furnish water for domestic purposes, and thereby increase the income and the comfort of the residents along its line. This inducement was offered to every resident of the county. The offer was not restricted to any individuals or classes. It was not limited to the voters. This offer was neither a corrupt nor an illegal consideration, and there is no reason why the county should be re-

lieved from its just and voluntary obligations because this consideration may have had its legitimate influence in inducing the voters to accept the proposition which offered it."

It appears that the inducement complained of in this case was contained in the proposition submitted by the Irrigation Company to the county, and the court was therefore called upon to determine whether same was improper and amounted to bribery, whereas, in the instant case, as hereinbefore stated, the alleged improper or illegal inducements complained of do not appear to have been made by any one authorized to speak for the city of Muskogee and formed no part of the ordinance providing for the election or of the proclamation itself, and are therefore without any legal effect whatever, and, if made, amounted to no more than campaign argument, which the voters could accept or reject as they saw fit, and could in no wise affect the validity of the bonds, if otherwise legally voted. Any citizen or group or committee of citizens supporting or opposing the bonds had a right to make any argument they saw fit, and promises or inducements made by any citizen or group of citizens in a campaign such as involved herein are without any binding effect, and even if relied upon by the voters, do not constitute bribery and will not vitiate an election otherwise valid. Only when such inducements or promises inhere in the election itself, are they of any binding force upon the municipality.

It is further contended that persons other than those qualified under the law to vote in elections of this kind were permitted to vote and that conclusive evidence of this fact could have been presented but for the fact that the ballot stubs had been destroyed; that the destruction of those stubs was wrongful, same being destroyed before the lapse of 90 days succeeding the election in violation of section 6155, C. O. S. 1921.

The only case cited by plaintiff in support of this contention is Doss v. Chambers, a Texas case, 188 S. W. 260. We have examined this case, and also articles 3027 and 3028 of the Revised Statutes of Texas 1911, referred to therein, and as we construe that case, it simply holds that where a contest is brought, the contestants are not required to serve a notice on the clerk to preserve the ballots, but may presume that the ballots will be preserved, and if they are destroyed after bringing a contest, though more than a year after the election, same were not legally destroyed. The situation in the in-

stant case is entirely different from that presented in the Texas case. Under section 6155, C. O. S. 1921, the ballots are required to be kept 90 days. The record here discloses that they were apparently inadvertently destroyed by the janitor in April, at the time of the regular city election some 70 odd days after the bond election. No contest had been instituted at that time, nor was the suit filed until some 60 days after the 90 days expired. No fraud is shown or attempted to be shown in connection with the destruction of the ballots, nor is it shown that plaintiffs were in any way damaged by their destruction. In our judgment the trial court very properly held that there was not sufficient proof adduced to warrant the court in opening the boxes even if they were before the court and yet intact. Evidence was offered attacking the vote in nine precincts because of certain irregularities by reason of which persons not qualified under the law were permitted to vote. It is not shown as to just how many of such alleged illegal votes were cast nor whether they were for or against the bonds. The record discloses, however, that if all votes cast for the bonds in said nine precincts were thrown out, it would not be sufficient to change the result, but the bonds would still carry by a substantial majority.

This court in the case of Dunagan v. Town of Red Rock, 58 Okla. 218, 158 Pac. 1170, laid down the rule as follows:

"1. Where an election is held by duly appointed officers, the presumption is that the votes received and counted by them are legal, and the burden is on the party attacking the same to show their illegality.

"2. Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast."

See, also, Harris v. Palmer, 25 Okla. 770, 108 Pac. 385; Snyder v. Blake, 35 Okla. 294, 129 Pac. 34; Ledbetter v. Kimsey, 38 Okla. 671, 134 Pac. 868; Storm v. Parman, 43 Okla. 495, 143 Pac. 38; Kimberlin v. Board of Com'rs of Garvin County, 78 Okla. 143, 189 Pac. 361; and Goar v. Brown, 82 Okla. 227, 200 Pac. 156. Also, in Murray v. McGehee, 121 Okla. 248, 249 P. 700, it was held:

"Under section 6151, C. O. S. 1921, the election returns, when properly certified by the election officers of the precinct, consti-tute prima facie evidence of the precinct vote, and such returns will prevail in the absence of competent evidence to overcome the same."

In Kimberlin v. Board of Com'rs of Garvin County, supra, it was held:

"The mere fact that an inconsiderable number of persons disqualified to vote at a bond election were permitted to participate therein, is not sufficient to void such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes." Citing Shelton v. School Board Dist. No. 22 of City of Tulsa, 43 Okla. 239, 142 Pac. 1034.

This rule is well established in this state, and we can come to no other conclusion from the record before us than that the contention of plaintiffs in this regard is wholly without merit.

Plaintiffs further contend that since the ordinance providing for the election as well as the mayor's proclamation used the language "a city hall or municipal building" in stating the proposition for which the bonds were being voted, same was ambiguous and too indefinite and uncertain to properly apprise the voters of the exact nature of the public utility for which the bonds were being voted, as required by section 27, art. 10, of the Constitution.

It is further urged that the evidence shows that it was in fact a convention hall the city council wanted and intended to build, and that could not and did not come within the term "city hall," and that the term "municipal building" was not sufficiently definite to apprise the voters of the exact nature of the public utility. It is admitted that the city could vote bonds for a "convention hall," but that in order to do so legally the voters must be so advised in language definite and certain.

The only authority cited by plaintiffs on this proposition is Coleman v. Frame, 26 Okla. 193, 109 Pac. 928, wherein this court held:

"A proposition attempting to refer to the qualified property taxpaying voters of a city whether said city shall be allowed to become indebted for the purchase, construction, or repair of public utilities under section 27, art. 10, of the Constitution, must be stated in such specific language as to apprise the voters of the nature of the public utility the city wishes to purchase, construct, or repair."

That this is the law there can be no doubt, and since it is admitted herein that both the ordinance authorizing the election and the proclamation of the mayor calling

same stated that the purpose for which the bonds were being voted was to raise funds for the purchase or erection of a "city hall or municipal building," the question then is, was this language specific enough to apprise the voters of the nature of the public utility the city intended to purchase or construct? We think so. It is admitted that 'city hall' is sufficiently definite, but it is contended the term "municipal building" is not, and has never been defined, and therefore means nothing more than a building owned by the municipality. When considered alone, there might reasonably be said to be some ambiguity in the term "municipal building," but when used as here, "city hall or municipal building," the voters, in our judgment, were certainly advised in language specific and definite of the nature of the public utility to be purchased or constructed, the only reasonable and logical deduction to be drawn from the language used being that out of the proceeds of the bonds, if voted, a municipal building, to be used as a city hall, was to be erected.

Defendants cite McDougal v. Incorporated Town of Broken Bow, 71 Okla. 231, 176 Pac. 959, wherein this court held:

"The term 'for the purpose of providing funds for purchasing a site and constructing a building thereon for a town hall and jail, and furnishing same, to be owned and controlled exclusively by said town,' printed on the ballot used at an election held for the purpose of submitting to the qualified electors of a municipality the question of incurring indebtedness for the construction of public utilities under section 27, art. 10, of the Constitution, is sufficiently specific to apprise the voters of said municipality of the nature of the proposed public utility within the contemplation of said section of the Constitution."

It might be said that the addition of the words, "or municipal building," are unnecessary, and under this authority we think they might have well been omitted, but at most they amount to mere surplusage, and did not destroy the effect or meaning of the specific and definite term "city hall."

Where there is an enumeration of a particular thing or things, followed by general words, the latter shall be construed as having reference only to things of the same kind or class with those specifically mentioned. Cutshaw v. City of Denver, 19 Colo. App. 341, 75 Pac. 22. It is well settled that where words of general import follow specific designations, the application of the former is controlled by the latter. Morse v. Morrison, 16 Colo. App. 449, 66 Pac. 169.

In the instant case the words 'municipal building" are words of general import following the specific designation "city hall," and therefore refer to, and are controlled, in their application, by the definite term "city hall."

In support of their contention that it was the purpose and intent of the council to erect a convention hall, plaintiffs urge that the evidence shows that less than one-fourth of the space in said building was to be used by the city for the conduct of its municipal affairs and that the balance of about 75 per cent. was to be used in housing the Chamber of Commerce and certain civic organizations, free of rent, and in this connection much stress is put on the testimony of Councilman Fred Brown, who was a member of the building committee and who referred in his testimony to the proposed building as a "municipal building and convention hall." The mere use of the words "convention hall" by the witness Brown in testifying does not in any particular change the character of the public utility for which the bonds were voted, nor are they conclusive or even persuasive as to the ultimate use of the building by the city when erected. Mr. Brown doubtless believed that a part of the building would be used as a convention hall, and as one of the councilmen would doubtless favor so using it, which in our judgment he would have a perfect right to do in the exercise of his discretion as a member of the city council. His desires in this regard, however, would have to be acquiesced in by a majority of the council, and neither he nor any other member of the council could bind the city to the use of the building for any particular purpose. This is a matter largely within the discretion of the governing body, and the courts should not interfere with such discretion except in a plain case of its abuse.

Motives of officials and of electors are not proper subjects of judicial inquiry in an action like this so long as the means adopted for submitting the proposal to the people conformed to the requirements of the law. Detroit United Railway v. City of Detroit, 255 U. S. 171, 65 L. Ed. 570; Angle v. Chicago, St. P., M. & O. R. Co., 151 U. S. 1, 38 L. Ed. 55.

It does not appear herein how many, if any, of the voters were influenced by the activities of and statements made by the so-called citizens committee, and we are unable to say, and it is certainly not disclosed by this record as to what actuated the 3,382

voters in casting their votes for and against the bonds.

The rule is well stated in Epping v. Columbus, 117 Ga. 263, 43 S. E. 803, wherein the court said:

"The courts cannot inquire into the motives prompting persons to vote on questions of this character, where the voter freely and voluntarily exercised his right. Inducements held out to influence a voter, although false and fraudulent, will not invalidate the election. The rule might be different where it appeared that by force and fraud the voter was compelled to vote in a way he did not desire to vote. The allegation of the objection in the present case did not bring the case within the purview of this last statement, even if that would be the rule. Where the election is regularly called and regularly held, and the voters freely and voluntarily exercise their right to vote, the election will not be invalidated simply because some of them may have been misled by some one interested in the result of the election."

In our judgment the most that can be said here is that some of the voters might have been misled by some one interested in the result of the election, and even that does not clearly appear.

As was said in Halbruegger v. City of St. Louis (Mo.) 262 S. W. 379:

"The question is usually one of policy for the legislative department, and becomes one of law only when it clearly and convincingly appears that the power to be exerted in furtherance of the policy adopted, does not reside in the legislative body. * * *

"There seems to be no dissent from the rule that the erection of a city hall is within corporate purposes of municipalities, and that a room for public assemblages may be included therein, and paid for with public money."

With this doctrine we are in hearty accord. See, also, Wilkerson v. Lexington (Ky.) 222 S. W. 74; First Wisconsin National Bank v. Catawaba (Wis.) 197 N. W. 1013; Bell v. Platteville, 71 Wis. 139, 36 N. W. 831; State v. Barnes, 22 Okla. 191, 97 Pac. 997. We might cite and comment on numerous other cases to the same effect. but to do so would unnecessarily prolong this opinion and would serve no useful purpose.

From a careful reading of this entire record and consideration of all the authorities cited, we are clearly of the opinion that the evidence wholly fails to show the offering of any improper or illegal inducements on the part of the city authorities in submitting this question to the voters, and certainly the evidence of plaintiffs even with all the inferences and conclusions which may be reasonably drawn therefrom, is insufficient to vitiate the election herein on any of the grounds alleged, and it therefore follows that the trial court did not err in sustaining the demurrer to plaintiffs' evidence and in rendering judgment for defendants, and the judgment is therefore in all things affirmed.

LESTER, V. C. J., and HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., absent.

CLARK and RILEY, JJ., not participating.

Note.—See under (2) 9 R. C. L. p. 1148 4 Perm. Supp. p. 2600. See "Municipal Corporations," 44 C. J. §4033, p. 1110, n. 72; 4171, p. 1198, n. 37; §4180, p. 1206, n. 83.