CITY OF HUGHES SPRINGS, TEX., et al.
v. LIPS.

No. 9620.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1941.

C. E. Bryson, of Houston, Tex., for appellants.

Thos. B. Ramey, of Tyler, Tex., James G. Martin and Justus H. Fugate, both of Wichita, Kan., A. B. Huguenin, of Dallas, Tex., and Thomas E. Elcock, of Wichita, Kan., for appellee.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, Mrs. L. J. Lips, brought this suit to recover on certain warrants and interest coupons issued by the City of Hughes Springs, Texas, denominated City Hall warrants; for an injunction to prevent diversion of taxes collected to liquidate them; and for other equitable relief, and was granted a decree, from which this appeal is taken.

The District Court found as follows: The city entered into a contract with W. A. Westbrook for the purchase of the site and the erection of a building for a city hall. The building was completed in December, 1927, and accepted. The building was a steel frame structure, outside dimensions 80 by 120 feet, with two rooms downstairs with a stage in between them and an auditorium approximately 80 by 90 feet in front of them, suitable for holding public meetings. Twenty warrants, in the total sum of $16,000, were turned over to Westbrook in payment. The contract for the construction of the city hall was legal, was ratified and confirmed by proper ordinance and the warrants were duly and legally issued in payment to the contractor. The city had the power to erect the building, issue the warrants and levy taxes to pay them at the rate of $1.50 on each $100 of assessed value. During the years 1928, 1929, 1930 and 1931, the city levied taxes at the rate of 65 cents per $100 of valuation of property in the city for the payment of the warrants and interest thereon and the funds collected were placed in a fund denominated "City Hall Funds." Warrants 1 to 4 inclusive, aggregating $3200 in principal, were paid and interest on all the outstanding warrants, was paid up to March 12, 1932, but nothing had been paid since that time. All the past due warrants and coupons were properly presented for payment and payment was refused, prior to the institution of this suit.

From the findings of the District Court, there is no doubt Mrs. Lips acquired warrants Nos. 5 to 20 inclusive, together with interest coupons, as an innocent purchaser, without notice of any defects in the warrants or the proceedings in which they were issued, if there were such, and for approximately the face value of the warrants.

The city does not seriously dispute that the building of a city hall and the issuance of the warrants in payment therefor was within the powers of the city nor that the city is authorized to levy taxes to liquidate the warrants and coupons. However, it is contended it was not the intention of the city authorities to build a city hall but rather to build a community centre and the building erected was too large and expensive to be necessary for city government purposes, therefore, the action was ultra vires. Appellant cites authorities to the effect that city warrants are non-negotiable and the defense of ultra vires may be pleaded. It is unnecessary to review them as this may be conceded.

The District Court further found as follows: The city used the building for numerous city purposes for many years. Sessions of the city council were held there. City elections were held therein and a justice court was conducted in the building. The mayor had his office therein and any other proper municipal functions of the city were conducted in the building. For approximately six years the building was insured by the city as a city hall building. The city council for four years paid the salary of a janitor and caretaker as an employee for the city hall building. However, basketball games, a flower show and other exhibitions and public meetings were held there at authorized times.

The District Court concluded the warrants were valid outstanding obligations of the city and the city was estopped to deny their validity.

Appellant excepts to the findings of the District Court and contends the physical facts, based on the size and arrangement of the building, completely rebut the conclusion that it was primarily built for a city hall.

It is common knowledge that in a town the size of Hughes Springs, said to have about 600 inhabitants, it is usual and

customary to use the city hall building for social purposes, if it is large enough, such as the playing of basketball games by the local high school team, church fairs and suppers, moving pictures and occasionally theatrical entertainment, either amateur or professional. Used as such it is an asset of the community. There are numerous authorities holding that if a city has the power to build a city hall the inclusion of a room therein for public assemblages does not deprive it of its public character. See Halbruegger v. St. Louis, 302 Mo. 573, 262 S.W. 379; Reid v. Muskogee, 137 Okl. 44, 278 P. 339.

The findings of the District Court are adequately supported by the record. We think there was sufficient continuous use of the building by the officers of the local government for government purposes to impress it with the character of a city hall and any social use that was made of it by the inhabitants of the town was occasional, incidental and inconsequential.

We agree with the conclusion of the District Court that it was within the power and authority of the city to issue the warrants, for which the city received full value, and that the city is estopped to deny the validity of the warrants because of the other uses made of the building. Payne v. First Nat. Bank, Tex.Com.App., 291 S.W. 209; Slayton & Co. v. Panola County, D.C., 283 F. 330.

The judgment is affirmed.