SCHOOL DISTRICTS — BOND ISSUES SPECIFICITY AS TO PROJECTS UPON WHICH BOND PROCEEDS ARE TO BE EXPENDED The language of Article X, Section 26 of the Oklahoma Constitution does not legally bind school districts to specific projects for which the monies of a bond issue must be expended, and Tulsa School District No. 1 was not bound by the language of the special bond election conducted November 4, 1969, to expend the bond proceeds on specific projects. However, official acts of a school board as reflected in resolutions and minutes of the board leading up to and inhering in the bond election can be relied on as disclosing the purposes for which the funds are to be used and be binding on the school board. A school board may issue school bonds for a more specific purpose or project than those enumerated in Article X, Section 26 of the Constitution, provided the specific purpose or project falls within the general purposes provided by law. Pursuant to Enrolled House Bill No. 1172, Second Regular Session. Thirty-fifth Oklahoma Legislature, effective January 1, 1977, school boards will be required to specify in the call of election for a bond issue the purposes and specific projects for which 70 percent of the bond proceeds are to be expended. The Attorney General has considered your request for an opinion wherein you ask the following questions: "1. Does the language of Article X, Section 26 the Oklahoma Constitution legally bind school districts to specific projects for which the monies of a bond issue must be expended, and, specifically was Tulsa Independent District No. 1 bound to particular projects within the language of the special bond election conducted November 4, 1969? "2. May a school board issue school bonds for a more specific purpose than that provided in Section 26? "3. Does any action, communication, statement, pledge or promise by the governing board of a school district legally bind said board to specific projects if a bond issue is voted and the ballot contains the general purposes set out in Section 26?" Article X, Section 26 of the Oklahoma Constitution makes provision for political subdivisions to become indebted in an amount exceeding the revenue produced for that year and provides, in part: "Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that if a school district has an absolute need therefor, such district may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness,.in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, for the purpose of acquiring or improving school sites, constructing, repairing, remodeling, or equipping buildings, or acquiring school furniture, fixtures or equipment; and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need, unless provided by law . . . ." (Emphasis added) Title 70 O.S. 15-101 [70-15-101] (1971), provides in pertinent part: "Whenever it shall become necessary for the board of education of any school district to raise sufficient funds for the purchase of a school site or sites, or to erect or purchase and equip a suitable school building or buildings, either or both, or for the purpose of making repairs to an existing school building or buildings, or for the purchase of school furniture and fixtures, or for making improvements to any school site or sites, either or both, it shall be lawful for such board of education to borrow money for which it is hereby authorized and empowered to issue bonds . . . ." Section 70 O.S. 15-106 [70-15-106] of Title 70 provides, in part: "Any school district that is authorized by law to provide transportation for pupils to and from school may become indebted for the purpose of purchasing transportation equipment and may issue its bonds, as hereinbefore provided, in any amount not exceeding, with existing indebtedness, ten percent (10%) of the valuation of the taxable property within said school district as shown by the last preceding assessment for state and country purposes previous to the incurring of such indebtedness . . ." (Emphasis added) It is apparent that school districts are authorized to issue general obligation bonds for the enumerated purposes set out above. In your request for an opinion you relate that your first question concerns itself with a fact situation wherein a school district utilizes in the ballot title proposition one or more of the general purposes authorized by law. Your inquiry is whether the school district is bound to a more specific project or purpose than that approved by the voters. You inquire specifically in your request about the purpose clause language contained in the ballot title submitted to and approved by the voters in Independent School District No. 1, Tulsa County, on November 4, 1969. Being required by 62 O.S. 13 [62-13] (1971), to approve the legality of said bond issue, the records of the Attorney General reveal that said issue was approved by the Attorney General on January 28, 1970, and that the ballot title contained the following purpose clause: ". . . for the purpose of acquiring or improving school sites, constructing, repairing, remodeling, or equipping buildings, or acquiring school furniture, fixtures or equipment, either or both, and all or any of said purposes, . . ." In authorizing the school district to become indebted by the issuance of bonds for said purposes, the voters did not limit the school board to expending said money on any specific projects. Pursuant to such a purpose clause a school board may properly expend the bond proceeds for any specific project which it deems necessary, provided such project falls within the general purposes set forth in the purpose clause. Such determination, however, is not without limitation. As stated by the Court in Johnson v. City of Muskogee, 194 Okl. 513 (1944): "The decisions of this court have been uniform in approving bond elections and bond issues (1) where the purpose was a legitimate municipal function; (2) where that purpose was plainly stated in the election proclamation, and (3) where legal formalities were observed. Extraneous evidence has not been allowed to overcome the purpose expressed in the formal proceedings. This does not mean that constitutional limitations on the use of the money thus raised can be ignored. Those decisions stand for the rule that the purpose stated in the bond election proclamation, manifested elsewhere in the transcript, was accorded the status of good faith. If it should thereafter be attempted to use the money for purposes that were violative of this stated purpose appropriate remedies are available." Article X, Section 16 of the Oklahoma Constitution provides: "All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose." In Borin v. City of Erick, 190 Okl. 519, 125 P.2d 768 (1942), the City of Erick submitted to a vote of the people the question of incurring indebtedness in the amount of $60,000 by the issuance of general obligation bonds for the purpose of constructing and equipping a municipal power plant. Suit was brought to restrain the sale and delivery of the bonds for reason that the proposition submitted on the ballot did not specify the true purpose for which the money was to be used. The facts of the case reveal that the total project was to cost $110,000, with $50,000 due from a federal grant. Subsequent to approval of the bond issue at the election, the federal government withdrew its grant and the city proposed to sell its bonds to build a $60,000 plant instead of one costing $110,000. In restraining the sale the Court stated that while voters cannot rely on campaign promises of members of the city council and other parties as binding on the municipality, official resolutions and minutes of the council leading up to and inhering in the election can be relied on as disclosing the purpose for which the funds are to be used. In constructing Article X, 16 of the Constitution the Court stated: "The very purpose of section 16 is to require officials to reveal in the ballot the true purpose in mind. To contemplate one purpose and submit a substantially different one to the vote of the people constitutes a direct violation of said section 16. We do not say that the personal intentions of the officers will enter into the question. But their official acts will . . . ." In Sooner State Water, Inc. v. Town of Allen, Okl.,396 P.2d 654 (1964), an action was brought to enjoin delivery of a $30,000 bond issue of the town of Allen, in part, because of misrepresentation to the citizens regarding the use of the bond proceeds. Affirming a lower court decision dismissing the action, the Court stated: ". . . We hold that campaign arguments presented in speeches, pamphlets or newspaper advertisements made by committees, organizations or individuals, which arguments have no official status, cannot be used as a basis for voiding an election. Misrepresentations sufficient to void an election must have an official origin, i.e., appear in some phase of the bond pro ceedings. Neither is it sufficient that such misrepresentations be made by some city official speaking or acting in his individual capacity, and when such misrepresentations constitute no part of the official proceedings. It is beyond the realm of reason that the validity of bond issues, regularly adopted by a vote of the people, should depend upon the character of campaign speech or advertisement initiated by some individual or group acting in an unofficial capacity." And in Reid v. City of Muskogee, 137 Okl. 44,278 P. 339 (1929), the Court said: ". . . Any citizen or group or committee of citizens supporting or opposing the bonds had a right to make any argument they saw fit, and promises or inducements made by any citizen or group of citizens in a campaign such as involved herein are without any binding effect, and even if relied upon by the voters, do not constitute bribery and will not vitiate an election otherwise valid. Only when such inducements or promises inhere in the election itself, are they of any binding force upon the municipality." In regard to your first question it is apparent that the language of Article X, 26
of the Oklahoma Constitution does not legally bind school districts to specific projects for which the monies of a bond issue must be expended and that Tulsa Independent School District No. 1 was not bound by the language of the special bond election conducted November 4, 1969, to expend the bond proceeds on specific projects. However, official acts of a school board as reflected in resolutions and minutes of the board leading up to and inhering in the bond election can be relied on as disclosing the purpose for which the funds are to be used and be binding on the school board. In regard to your second question, neither the provisions of Section 26 nor the statutes vitalizing same restrict the issuing body from referring specific purposes or projects to a vote of the people provided the specific purposes or projects fall within the general purposes provided by law for the issuance of bonds. Enrolled House Bill No. 1172, Second Regular Session, Thirty-fifth Oklahoma Legislature provides in Section 4: "B. At any election upon the question of issuing bonds, which if approved would require an ad valorem tax levy or pledging the full faith and credit of the State of Oklahoma, the governmental entity calling such election shall set forth in the call of election, in a legally qualified newspaper of general circulation in the area wherein said bond issue proceeds are to be expended, a general statement of all purposes and specific projects for which seventy percent (70%) of the proceeds shall be expended, with a further listing of the dollar amounts to be expended on each specific project. The dollar figure left unlisted as to specific projects shall not exceed thirty percent (30%) of the total amount of the bond issue. "C. If any such bond issue is approved at an election, the particular governmental entity shall expend all of the proceeds of such bond issue for the purposes set out in the proposition voted upon and shall expend not less than eighty-five percent (85%) of the monies allocated to each specific project, unless such project can be completed for a smaller amount of money, on that project as published according to Section 4(B) of this act and for which the bond issue was approved. Provided, however, that if any money becomes available from any source outside the bond proceeds for any specific project, the outside funds would be used to reduce the amount of bond funds to be expended on that specific project. In such event, the governmental entity may expend that amount less than the specified eighty-five percent (85%) and may use the surplus funds on other projects within the same general purpose or to reduce the sinking fund. This section shall not apply in the event a final judicial determination or Federal or state laws, regulations or rules preclude the undertaking or completion of a specific project." Providing an effective date of January 1, 1977, said bill requires school boards to specify in the call of election the purposes and specific projects for which 70 percent of the bond proceeds are to be expended. Your third question has been answered in the discussion presented on Question 1. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: The language of Article X, Section 26 of the Oklahoma Constitution does not legally bind school districts to specific projects for which the monies of a bond issue must be expended, and Tulsa School District No. 1 was not bound by the language of the special bond election conducted November 4, 1969, to expend the bond proceeds on specific projects. However, official acts of a school board as reflected in resolutions and minutes of the board leading up to and inhering in the bond election can be relied on as disclosing the purposes for which the funds are to be used and be binding on the school board. A school board may issue school bonds for a more specific purpose or project that those enumerated in Article X, Section 26 of the Constitution, provided the specific purpose or project falls within the general purposes provided by law. Pursuant to Enrolled House Bill No. 1172, Second Regular Session, Thirty-fifth Oklahoma Legislature, effective January 1, 1977, school boards will be required to specify in the call of election for a bond issue the purposes and specific projects for which 70 percent of the bond proceeds are to be expended. (Mike D. Martin) ** SEE: OPINION NO. 78-101 (1978) **